[L. A. No. 596.   In Bank.—September 17, 1900.]

GEORGE W. BECK, Appellant, v. PASADENA LAKE VINE-
YARD LAND AND WATER COMPANY, Respondent.

Water Companies—Conveyance to Members—Proportionate Share
of Expense—Disincorporation—System of New Company—Cus-
tomary Rates—Rights of Old Members.—Where a former water
company had conveyed lands and water rights to its members,
agreeing to supply the water subject to its rules and regula-
tions, on condition of paying a proportionate share of the ex-
pense of maintaining its pipes, flumes, zanges and reservoirs,
and after allowing them to become greatly out of repair had
disincorporated, and a large number of its members had formed
a new stock company, which had at great expense rehabili-
tated and improved the system, and constructed new pipes—
one who was only a member of the old company, and who had
applied to the new company for delivery of his share of
water by connection with a new pipe wholly constructed
by it, which was granted on certain conditions, including pay-
ment of its customary rates, cannot, after such connection
and payment of such rates, insist upon delivery of the water
under the former method of proportionate expense, without
payment of the customary rates charged by the new company
to all consumers of water.

Id.—Injunction Suit—Severance of Connection With New Pipe—
Right to Connect With Old System—Findings—Judgment With-
out Injury—Appeal.—In·an action by a member of the former
company to enjoin the new company from severing connec-
tion with its pipe for nonpayment of its customary rates, where
the facts found are such that, whatever may be the plain-
tiff's right to connect with the pipes and reservoirs of the
former company, by paying his proportionate share of costs
and expenses, he is not injured by a judgment against his
right to receive water by connection with a new pipe con-
structed by the new company, without payment of its custom-
ary rates under a subsequent special contract for such pay-
ment, the judgment will be sustained upon appeal.

Cost Bill—Time for Filing—Delivery of Findings and Judgment to
Clerk—Nonfiling—Nonpayment of Calendar Fee.—A cost bill
filed and served within five days after delivery of the de-
cision and judgment to the clerk cannot be stricken out be-
cause the clerk failed to indorse any filing upon the decision
and judgment until after the filing of the cost bill, upon the
alleged ground that the calendar fee had not been paid.

Id.—Nonpayment of Former Fee—Duty of Clerk as to New Service.
The clerk cannot, because of the nonpayment of a former

fee which he had neglected to demand in advance, prop-
erly refuse to perform a new service which it is his duty
to perform. It was the duty of the clerk to file the findings
and judgment when they were delivered to him to be filed,
without regard to the unpaid calendar fee.

ID.—NEGLECT OF CLERK'S DUTY—RIGHTS OF PARTY NOT FORFEITED.—As
a general rule, a party is not to suffer the forfeiture of a right
because the clerk has neglected to perform his duty.

APPEAL from a judgment of the Superior Court of Los
Angeles County and from orders denying a new trial, and deny-
ing a motion to strike out a cost bill. Walter Van Dyke,
Judge.

The facts are stated in the opinion of the court.

William H. Fuller, for Appellant.

A. R. Metcalfe, and Anderson & Anderson, for Respondent.

McFARLAND, J.—Plaintiff appeals from a judgment in
favor of the defendant, from an order denying his motion for
a new trial, and from an order denying his motion to strike
out defendant's cost bill. Appellant claims a certain interest
in the water of a stream called the Arroyo Seco, and had been
taking the water by connection made with a pipe of the re-
spondent and paying respondent certain customary water rates
therefor. Shortly before the commencement of this action,
appellant had declined to pay these water rates, or any rates,
and respondent had refused to furnish him any more water
without payment of the rates, and had threatened to sever the
connection between appellant's pipe and that of respondent,
and thus cut off the water; and thereupon appellant brought this
action to have it adjudged that he owned the amount of water
claimed by him and that he had . the right to take it from
respondent's pipe, and he prayed for an injunction restraining
respondent from cutting off the water by severing the con-
nection between the pipes. The main question in the case is
whether or not appellant has the right to .take water from ap-
pellant's pipe without paying water rates therefor.

The history of the events out of which. the litigation arose
runs through a good many years, and presents facts somewhat

complicated and difficult to state briefly, but the main features of the case necessary to be noticed are these: From 1875 to 1894 there was in existence a corporation called the Lake Vineyard Land and Water Association. It was disincorporated in 1894. In 1875 it owned a tract of land containing two thousand five hundred acres, situated in and near the city of Pasadena, and also the seven-tenths of all the water of the said Arroyo Seco. Its purpose was to divide this tract of land into small lots and sell the same, and to grant to each purchaser an interest in the water proportionate to the amount of land purchased. It built a ditch about three miles long from a point on the stream called Devil's Gate, and thus carried the water to some reservoirs, and it had some pipes and branch ditches through which the water could be to some extent distributed. In 1883 it conveyed to Annie and Luke Wilson a lot of land containing thirty-three and seven-hundredths acres—part of the two thousand five hundred acre tract; "and also, as appurtenant to the said above-described lot of land, seven and one-half ($7\frac{1}{2}$) five hundredth parts of all the right, title and interest of the said Lake Vineyard Land and Water Association, as the same was originally conveyed to said association, and prior to any conveyance by said association, in and to the waters of Arroyo Seco, said interest of said association being divided into five hundred parts, and with the right to use the same from the pipes and reservoirs of said association under the rules and regulations to be prescribed by said association, provided and upon the condition that the interest in said waters and the right to use the same herein directed to be conveyed shall be liable for the costs and expenses incurred in tending and keeping in repair the pipes, flumes, zanges and reservoirs through which said waters are conducted, in the proportion that said number of parts herein agreed to be conveyed bears to the whole number of parts in said waters"; and appellant bases his rights asserted in this action upon the clause of the grant to the Wilsons just quoted. In July, 1886, the said Wilsons conveyed the above lands to H. M. Magee; in August 1891, Magee conveyed to L. P. Hansen fifteen and sixteen-hundredths acres of said land; and in April, 1894, Hansen conveyed to plaintiff two and one-twentieth acres of said land—the

proper proportionate share of the water following the above conveyances of land.

The old association having disposed of all of the said two thousand five hundred acre tract and its said water rights to purchasers, and having little further interest in the matter, made no effort to keep the waterworks in repair. The ditch became cracked and leaky, so that a great deal of the water which entered it at Devil's Gate never reached reservoir No. 1; the reservoirs, being merely mud reservoirs, became dirty and filthy; and the purchasers could not get sufficient water, nor any water fit for use. Under these circumstances the respondent, the Pasadena Lake Vineyard Land and Water Company, was incorporated in 1884 by a large majority of the purchasers from the old association for the purpose of utilizing the water rights acquired as aforesaid, and developing and acquiring further water, if necessary, so that they might have sufficient supplies of good water. These persons granted to the new corporation their interest in the water and received therefor shares of the corporate stock. A few of the purchasers from the old association—including appellant's grantors—declined to join the new movement and did not convey their interests in the water to respondent. The respondent laid a steel pipe from Devil's Gate to reservoir No. 1, cemented the reservoirs, laid some new pipe in place of old ones which were of inferior quality, laid pipe lines to places where there had been none before, and developed the water so as to greatly increase the flow. To assist in doing this it levied and collected assessments on the stockholders amounting to seven dollars and fifty cents per share. It also established a water rate which was charged its stockholders for water furnished them, the rate being fixed at an amount which was considered to be about sufficient to keep the works in proper repair and running order.

The acts and conduct of appellant and his grantors with respect to their rights are these: The Wilsons never made any connections of any kind with the distributive system of the old association; Magee never made any connections with works of the old association; but in May, 1897, he, as owner of the proportionate share of water appurtenant to his land, made written application to the corporation respondent to make con-

nection with a pipe line of respondent, which never belonged
to the old association, to take water to his land; the respond-
ent, in writing, granted the application upon the condition that
the pipe line to be laid by Magee should become the property
of the respondent in one year after it was laid, and that Magee,
in using the water, should conform to the rules and regula-
tions prescribed by respondent. Magee laid his pipe and con-
nected it with the pipe of respondent, and commenced taking
water and paying to respondent therefor the rate charged to
its stockholders, and continued to so take and pay until he con-
veyed to Hansen; and after that Hansen was substituted on
the books of the respondent in place of Magee, and has con-
tinued to take and pay for the water as Magee had done, up
to the present time. In May, 1894, Hansen made application
to respondent to connect with one of its pipe lines which had
never belonged to the old association, and the application was
granted and the connection made, and Hansen continued to
pay the usual rates for water charged by the respondent.
After the appellant purchased from Hansen and had built a
house upon the tract which he purchased, he had his land con-
nected with respondent's system by a pipe which he connected
with the pipe that had been laid by Hansen, and commenced to
pay the regular rates which it charged for water. He continued
to pay these rates for about two years, and in the month of
December, 1895, had paid as such rates the total of forty-nine
dollars and thirty-five cents. He afterward refused to pay any
more rates, and at the time of the commencement of this ac-
tion there was due from appellant to respondent, according
to respondent's rates, about thirteen dollars and fifty cents;
and for the refusal to pay this amount respondent threatened
to shut off the water. Respondent is willing to continue to
furnish appellant the water which he claims, as it has been
accustomed to do, upon the payment by appellant of the usual
rates. Under these facts the court below properly refused to
enjoin respondent from severing the connection between the
pipes of the parties.

The contention of appellant is that, notwithstanding the
fact that he and his grantors had for many years, at their own
request, received their water through the pipe of respondent

and paid the customary rates therefor, yet he has the right to now return to the method described in the deed from the old association to the Wilsons in 1883, namely, to demand of respondent a statement of "the costs and expenses incurred in tending and keeping in repair the pipes, flumes, zanges and reservoirs through which said waters are conducted," and, having obtained such statement, to have his water carried and delivered to him through respondent's pipe upon payment by him of his proportionate share of such costs and expenses. We waive the point made by respondent that appellant, by the acts above mentioned of his grantors and himself, continued during a period greater than the statutory period within which he could successfully have brought an action to enforce his alleged water right, is estopped from asserting any right in the premises other than the one he has been exercising during that period. Whatever interest in the water appellant still has under the deed to the Wilsons in 1883, that deed does not give him the right to compel respondent to allow him to connect with respondent's present pipe at the point where he demands connection. That pipe is no part of the "pipes and reservoirs" of the old association which, by the deed, appellant's grantors were entitled to use "under the rules and regulations to be prescribed by said association." It is a pipe laid by the respondent for the benefit of itself and its stockholders. It is true that several years afterward, in 1894, the old association was disincorporated and respondent was appointed its trustee for certain purposes. But this pipe in question was constructed long prior to that time and while the association was in existence, and was built by respondent for its own purposes and in order to take water to the lands of its stockholders, and it was no more a part of the works of the old association than would have been a pipe laid by any other person in order to connect with the old works. The court so found; and the contention of appellant that the finding is not sustained by the evidence is not maintainable. Under the old association purchasers were not entitled to have water brought upon their land; their right was simply "to use the same from the pipes and reservoirs of the association under the rules and regulations to be prescribed by said association." The pipe in ques-

tion laid by respondent is as much its own property as were the pipes of Magee and Hansen—laid for the same purpose—the property of those persons.

Appellant contends that there is no finding as to his averment that he is the owner of the one twelve hundred and twentieth part of all the title and interest of the old association in the waters of the Arroyo Seco, and of the right to take the same "from the pipes and reservoirs" of said association upon paying his proportionate share of the "costs and expenses incurred" as above stated "under the rules and regulations," etc. This contention, however, cannot be maintained. The court did find as to this averment. The averment was that appellant owned one twelve hundred and twentieth part of all the waters of the Arroyo Seco; and in finding IV the court found that appellant did not own "the right to take and use the one twelve hundred and twentieth part of all the waters of the Arroyo Seco, but has the right to use that amount of seven-tenths of the waters of the Arroyo Seco under the rules and regulations prescribed and to be prescribed" by respondent as trustee of the old association; and that the deeds to the Wilsons, to Magee and Hansen, and to plaintiff, "did convey to the grantees in said deeds the right to use the waters mentioned in said respective deeds 'under rules and regulations prescribed and to be prescribed by the Lake Vineyard Land and Water Association.'" The same thing is substantially found in findings IX and XV. What the court did find—and this involved the real issue in the case—was that the terms of the Wilson deed did not entitle appellant to receive his water by a connection which had been made with respondent's pipe under the subsequent special contract; and that to avail himself of that contract he must comply with it on his part by paying the customary rates charged all consumers.

Although this case has been strenuously litigated it does not appear to involve much of pecuniary value. The court found that the rates paid by appellant did not equal in amount his proportionate share of "the costs and expenses" of operating the system; and although appellant contends that the evidence does not support this finding—and we need not determine whether or not it does—still it is apparent that the difference

cannot be of much importance. Appellant appeals for an equitable consideration of the case, and says that the stockholders of respondent at one time received a dividend of one dollar per share, and that he cannot receive any dividend; but it must be remembered that the stockholders had paid seven dollars and fifty cents assessment per share, without which a sufficient supply of water fit for use could not have been obtained by any of the purchasers from the old association. Whatever may be appellant's right to connect with the pipes or reservoirs of the old association by paying his appropriate share of costs and expenses, the judgment in the present action is correct.

2. The court did not err in denying appellant's motion to strike out respondent's cost bill of thirty dollars. The grounds of the motion were that the cost bill was not filed and served within five days after the filing of the decision and judgment, and because it was filed before the filing of the latter. The facts are these: On February 1st, the findings and judgment signed by the judge were handed by respondent's attorney to the clerk for filing; at that time nothing was said by the clerk about a fee for such filing, or about any fee whatever; within five days thereafter respondent filed and served his cost bill; on February 8th appellant's attorney gave notice that on February 14th he would move to retax the costs by striking out of the said cost bill certain enumerated items, and on the 14th the motion was heard and denied—no point having been then made that the cost bill had not been properly filed. Afterward respondent's attorney was informed by the clerk that he had not filed the findings because there remained unpaid an old fee of two dollars "for placing said action on the calendar for trial." The statute provides that the party asking to have a case put on the trial calendar must pay this two dollar fee; but it does not appear at whose request the case at bar was put on the calendar. Moreover, if this old fee had been owing by respondent, and the clerk had voluntarily put the case on the calendar without demanding or receiving it, he was not authorized by any statutory provision to which we have been referred to refuse to perform a subsequent service because the former fee had not been paid. It does not appear

that there is any fee prescribed for filing the findings and judgment, and no point is made on the respondent's failure to pay any such fee. It appears, therefore, from the record that it was the duty of the clerk to file the said papers handed to him to be filed. (This is not like the case where papers are sent to the clerk by mail, and he has no opportunity to demand fees.) Therefore, the rule that a party shall not suffer the forfeiture of a right because the clerk has neglected to perform his duty applies in the case at bar in favor of respondent. An embarrassing case might possibly arise where the neglect of the clerk would necessarily forfeit a right of either one or the other of the parties; but such question does not arise in the case at bar. Our conclusion is, that the court did not err in denying the motion to strike out the cost bill.

The judgment and orders appealed from are affirmed.

Temple, J., Harrison, J., Garoutte, J., and Beatty, C. J., concurred.