[Civ. No. 15460.   Second Dist., Div. Three.   Apr. 7, 1947.]

MELVIN W. CASEY, Respondent, v. AMANDA F. FORTUNE, Appellant.

Reginald L. Dyer and Thomas A. Joyner for Appellant.

Charles L. Blek for Respondent.

WOOD, J.—This is an action for damages sustained by plaintiff as the result of a collision between an automobile operated by Robert Fortune and a motorcycle operated by plaintiff. Defendant Amanda Fortune is the owner of the automobile and the mother of Robert. Trial was without a jury. Judgment was for plaintiff against both defendants in the sum of $4,824.67. Amanda Fortune appeals from the judgment.

The accident occurred on July 10, 1944, at which time defendant Robert Fortune was 16 years of age, and had no license to operate an automobile. His parents were divorced, and the custody of said minor had been awarded to his mother, and he was living in her home. The complaint alleged, and the court found, that Robert was operating the automobile at the time of the collision with the consent of his mother.

The sole contention on appeal is that there is no evidence to support the finding that Robert was operating the automobile with the knowledge and consent of appellant.

Section 402(a) of the Vehicle Code provides that: "Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the operation of such motor vehicle . . . by any person using or operating the same with the permission, express or implied, of such owner, and the negligence of such person shall be imputed to the owner for all purposes of civil damages."

The only evidence introduced on the issue of permission was the testimony of appellant and Robert given under section 2055 of the Code of Civil Procedure. Appellant asserts that that testimony was uncontradicted, and that it shows that she had "persistently forbade the defendant Robert" to drive her automobile. ■ Permission, under section 402(a) of the Vehicle Code, cannot be left to speculation or conjecture nor be assumed, but must be affirmatively proved (*Engstrom* v. *Auburn Auto. Sales Corp.*, 11 Cal.2d 64, 68 [77 P.2d 1059]), and the fact of permission is just as important as is the fact of ownership (*Krum* v. *Malloy*, 22 Cal.2d 132, 134 [137 P.2d 18]). ■ The question, however, of whether there was such permission is one to be determined by the trial court upon the facts and circumstances in evidence and the inferences reasonably to be drawn therefrom. (*Boland* v. *Gosser*, 5 Cal. App.2d 700, 701 [43 P.2d 559].)

■ Appellant testified that she knew Robert had the automobile on the night of the accident, but that he did not have it with her permission; that he had asked her permission to use the automobile, but she did not know he had the automobile until he was gone; that she "naturally" heard him drive out but "it was too late," and she stated "I couldn't run after him, he was definitely told not to and the reasons why." In answer to the question, "Did you see him leave the home with the car?" she replied, "I was in the kitchen and he was gone before I knew it. I definitely said the reason I didn't want him to have the car, that is to drive, is because if he did get any ticket I would be the one responsible for it and that the insurance wasn't taken out yet." She also testified that, "We always keep our car keys" on the buffet; that they were there on the night of the accident; that she did not see her son take them, but they were in plain view, and he had access to them. In answer to the question, "Had he been using the car before that?" she replied, "I think for about two days before while I was at work he must have been using it to go to work but absolutely without my permission." She also testified that she did not know Robert had driven the automobile prior to the date of the accident "because you see I was at work," but that "we talked it over afterwards [after the accident]." In answer to the question, "Anybody else in your family drive the car?" she replied, "Well, at that time I think the other boy was not home."

Robert testified that he had previously driven the automobile to work two or three times; and that his mother "didn't want" him to drive it until he got an operator's license and until the automobile was insured.

Even though the testimony of the owner and the driver of the automobile was uncontradicted, the trial judge was not required to accept it. Appellant's answers were evasive as to whether she had knowledge, prior to the night of the accident, that Robert had been driving the automobile. While prior knowledge is not a necessary element of implied permission (*Burgess* v. *Cahill*, 26 Cal.2d 320, 324 [158 P.2d 393, 159 A.L.R. 1304]), the evidence was sufficient to support a finding that appellant did have knowledge prior to the accident that Robert had been driving her automobile. Although she said that she "didn't want" him to drive the automobile and she had told him the reason why she didn't want him to drive it, and although the circumstances with respect to his prior

use of the automobile were such that she should have suspected that he had disobeyed her, she did nothing further on the night of the accident to prevent him from using the automobile. On the contrary, she continued to keep the keys where they were easily obtainable by him, "in plain view" on the buffet where "We always keep our keys." The court may have concluded that, under the circumstances, the keeping of the keys in such an accessible place refuted her testimony that he was told not to use the automobile.

In the case of *Flemmer* v. *Monckton*, 73 Cal.App.2d 271 [166 P.2d 380], the sole contention of the appellant was that there was a complete lack of any evidence upon which the trial court based its finding that the defendant driver was driving the automobile with the implied permission of the defendant owner. That finding necessarily involved the rejection by the trial court of much of the testimony of defendants. The court therein stated, at page 275: "The facts which warranted the trial court in refusing to give full credence to the testimony of defendants are: (1) That both witnesses had an interest in the result of the case [citing authorities]; and (2) that there were contradictions, discrepancies and inconsistencies in the testimony of both defendants which could have been deemed to detract from its credibility." The court also stated therein, at page 276, that one of the factors which tended to show implied permission on the part of the appellant owner was: "The circumstance that the key was left in the car during appellant's absence, and the fact that no check was made upon the oil or gas or mileage to determine whether or not the car had been used."

Appellant states in her brief that plaintiff has cited cases involving employer-employee relationships, and has attempted to draw an analogy thereby to cases involving parent-child relationships. ▮ The statutory liability imposed by section 402(a) of the Vehicle Code is upon any owner of an automobile who is not liable under the doctrine of *respondeat superior*. It was stated in *Burgess* v. *Cahill, supra,* in discussing that section (p. 323), that the legislative purpose "was to protect innocent third parties from the careless use of automobiles and that this protection should be paramount to the rights of an owner who has permitted the use of his car by others even though he, personally, was not guilty of negligence. The wording of the statute is clear and indicates that purpose. The statute defines the owner's liability in cases where the

926

principle of *respondeat superior* is inapplicable, in order to make the owner liable for the negligence of any person to whom he had expressly or impliedly given permission to operate his car. [Citing authorities.] The legislation was plainly intended to enlarge the liability of the nonculpable owner of a motor vehicle for its operation on a public highway.''

■ Upon a consideration of all the facts in evidence, which it is unnecessary to repeat, we conclude that the evidence was sufficient to justify an inference that Amanda Fortune had knowledge of the repeated use of the car by Robert and that she tolerated such use even though she may not have approved of it in advance of his obtaining an operator's license. From the fact that she took no positive steps to prevent the use of the car by Robert under the circumstances, it could reasonably be inferred that she impliedly consented to its use.

The judgment is affirmed.

Shinn, Acting P. J., and Kincaid, J. pro tem., concurred.