[Civ. No. 3496. Fourth Dist. Nov. 10, 1948.]

JUDD A. REED, a Minor, etc., et al., Respondents, v. DONATO CORTEZ et al., Defendants; N. A. CENIGLIS, Appellant.

Head, Wellington & Jacobs for Appellant.

Harvey, Rimel & Harvey and Milford W. Dahl for Respondents.

GRIFFIN, J.—On September 17, 1945, at about 4:40 a. m. the plaintiff, Judd A. Reed, was driving his Ford sedan, in which his wife, Pauline Reed, was riding as a passenger, in a southerly direction on Olive-Orange Road, located in Orange County. At a point approximately one mile south of Olive and just north of the intersection of Taft Avenue, plaintiff collided with a truck operated by defendant Donato Cortez.

At the time of the accident and prior thereto, Cortez was accompanied by a Mexican national known as Flat Face, and whose true name was Metios Fycola. The evidence shows that Cortez had been drinking and was intoxicated at the time of the accident and that he was driving in his left-hand lane of the highway and that the collision occurred there. The truck driven by Cortez was owned by defendant and appellant Ceniglis. Plaintiffs received some injuries. Plaintiff husband was awarded damages in the sum of $600, and his wife in the sum of $3,500. Judgment was rendered against both defendants. Ceniglis has appealed from the judgment and from an order denying his motion for judgment notwithstanding the verdict.

The main question here presented is as to the sufficiency of the evidence to show that Cortez was driving the truck with the knowledge of or the express or implied consent of the owner, thereby charging defendant Ceniglis with responsibility for plaintiffs' injuries.

The evidence on this point shows that Ceniglis owned a brickyard. According to the testimony of Cortez, he and Fycola were and had been employed by Ceniglis for a month or so at the yard and lived on the premises along with other Mexican employees. He testified that he worked six days a week, making brick and had Sundays off; that he had a home in Chino where he went for the week ends; that it was part of his duty to drive the truck in the brickyard; that on one occasion Ceniglis drove the truck to Chino and Cortez rode with him; that on other occasions Fycola drove it and that Ceniglis was present and did not object to this arrangement; that he rode with Fycola to Chino on Saturday nights and Fycola would pick him up on Sunday night or early Monday morning and bring him back to the brickyard in Ceniglis's truck; that on Saturday night, September 15th, Fycola drove the truck to Chino and on Sunday he went with the driver to Los Angeles to a dance, arriving about 6 p. m.; that they consumed several drinks while there and that about 2 a. m. they left that city and that he was driving ''because Flat Face . . . was too drunk''; that on their return to Olive an accident took place and Flat Face disappeared.

A highway patrol officer investigated the accident and fully described the surrounding conditions and the intoxicated condition of the driver Cortez. He testified that several days after the accident he had a conversation with Ceniglis and that Ceniglis told him that the truck ''was stolen that night''

and that he asked him if Cortez was the boy that stole it and that Ceniglis said: "No, it wasn't"; that he said "he let that boy (Cortez) have the truck to drive to his home in Chino, to drive back and forth; that he did not have transportation; and that he had let him have the truck to drive back and forth to Chino"; that Ceniglis made no statement to him to the effect that he had discharged Cortez; that he did mention the other boy "Flat Face" and that he said he "would like to get his hands on him." Ceniglis denied that testimony.

Counsel for appellant argues that the testimony of the highway patrol officer as to the claimed oral admission by Ceniglis, involving the use of the truck in going back and forth between Olive and Chino for transportation purposes on week ends applied to permission given "Flat Face." The evidence of other witnesses might so indicate. However, the testimony of the officer was that such permission was given to *Cortez*.

Ceniglis testified that his employees used that particular truck, on the premises, and in connection with their work; that the yard was closed between March 4th and September 6th; that he had not given any employee permission to take the truck out on the highway; that after his return from a trip a deputy sheriff told him the truck was smashed; that that was when he found out that the truck was out of the yard; that neither Cortez nor Flat Face worked for him prior to September 10th; that he paid them $150 on contract; that he discharged them on September 13th; that he never allowed any employees to drive his trucks on their own personal business.

It is argued that there is no evidence that Cortez or Fycola were, at the time, agents or servants of Ceniglis or were acting in the course of their employment; that any work they were called upon to do for Ceniglis related solely to the brickyard premises; that since they were on their way back from Los Angeles, they were not carrying on any activity resulting in any benefit to Ceniglis; that under the evidence Ceniglis would not be liable, citing *Musachia* v. *Jones*, 65 Cal.App. 283 [223 P. 1006]; *Weber* v. *Pinyan*, 9 Cal.2d 226 [70 P.2d 183, 112 A.L.R. 407]; *Howland* v. *Doyle*, 6 Cal.App.2d 311, 314 [44 P.2d 453]; *Henrietta* v. *Evans*, 10 Cal.2d 526, 528 [75 P.2d 1051]; *Engstrom* v. *Auburn Auto Sales Corp*, 11 Cal. 2d 64 [77 P.2d 1059]; *Souza* v. *Corti*, 22 Cal.2d 454 [139 P.2d 645, 147 A.L.R. 861]; and *Boland* v. *Gosser*, 5 Cal.App.2d 700 [43 P.2d 559].

Under section 402, subdivision a of the Vehicle Code "Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner, and the negligence of such person shall be imputed to the owner for all purposes of civil damages."

■ If it could be held that Fycola was using the truck with the express or implied permission of the owner and the owner thereby became liable, the fact that such permittee, who accompanied such driver, entrusted the driving of the truck to another, would not necessarily change the owner's liability. (*Hicks* v. *Reis*, 21 Cal.2d 654 [134 P.2d 788]; *Souza* v. *Corti*, *supra*; *Brown* v. *Aldrich*, 77 Cal.App.2d 693 [176 P.2d 89]; *Davidson* v. *Ealey*, 69 Cal.App.2d 254 [158 P.2d 1000]; *Flemmer* v. *Monckton*, 73 Cal.App. 2d 271 [166 P.2d 380].)

The real question therefore is whether there is any evidence that Fycola was using the truck with the express or implied permission of the appellant at the time of the accident. ■ The law is settled that if the evidence shows that an automobile was being driven by an employee of the owner at the time of an accident, the jury may infer that the employee was operating the automobile with the permission of the owner. (*Blank* v. *Coffin*, 20 Cal.2d 457 [126 P.2d 868].) Under this rule the jury, as the trier of the facts, is justified in inferring that permission existed. ■ Providing the trier of facts does not act arbitrarily, it may reject *in toto* the testimony of a witness, even though the witness is uncontradicted. (*People* v. *La Fleur*, 42 Cal.App.2d 50 [108 P.2d 99]; 27 Cal.Jur. § 156, p. 182.) ■ The trier of facts is free to disbelieve the evidence as to the nonexistence of the fact of permission and may find that it does exist solely on the basis of the inference. (*Day* v. *General Petroleum Corp.*, 32 Cal. App.2d 220 [89 P.2d 718]; *Market Street Ry. Co.* v. *George*, 116 Cal.App. 572, 576 [3 P.2d 41].) ■ Of course the trier of facts may not indulge in the inference when that inference is rebutted by clear, positive and uncontradicted evidence of such a nature that it is not subject to doubt in the minds of reasonable men. If there is any reasonable doubt as to whether the inference, as a matter of law, has been rebutted, that doubt should be resolved in favor of submitting the question to the trier of facts. (*Hicks* v. *Reis*, *supra*.)

Ceniglis offered in evidence certain books of account and checks indicating that these employees had been "paid in full" at the time of the accident. However, he testified that merely because the check showed "paid in full" did not necessarily mean that the man was through with his work but that he was paid in full "for that week" or "for the period of time he works." After the accident Cortez was remanded to jail for driving while drunk and upon his release and during his probation period he returned to work for Ceniglis.

While the length of time that these two employees were employed by appellant is not clear from the evidence, it fairly well appears and the evidence indicates that these men were still in appellant's employ and were returning to work that Monday morning. The accident happened within 1 mile of their place of employment.

It does not appear that the truck was stolen. The employees had possession of it and were driving it. Under the cases cited there is an inference that the employee was operating the truck with the permission of the owner. The evidence of the appellant opposed to this inference is not conclusive. The question, therefore, was one of fact to be determined by the jury under proper instructions. There is evidence supporting its finding in this respect.

The cases relied upon by appellant bear more upon the question of restrictive use, their argument being that the evidence, considered in its most favorable light toward respondents, is that Ceniglis only gave Cortez or Fycola implied or express permission to use the truck for the purpose of driving back and forth from their work to Chino, and that the claimed trip to Los Angeles and return to Chino was not authorized. The remaining evidence offered by respondents rather indicates the granting of permission for the general use of taking the truck from the brick yard on Saturday night and returning to work in it on Sunday night.

The facts in the instant case are closely analogous to the facts found in the case of *Flemmer* v. *Monckton, supra.* The evidence in that case shows that La Londe, an employee, was instructed that the truck driven by him was not to be used off the ranch. It appears that he took the truck off the ranch for personal business to a town 10 miles distant and on returning became involved in an accident. The owner, on appeal, urged that the undisputed evidence showed that, in using the truck upon the highway, the employee was violating the

express instructions of the owner, particularly in that he violated the restriction as to place of use, and contended that the rules in *Engstrom* v. *Auburn Auto Sales Corp., supra,* and *Henrietta* v. *Evans, supra,* the cases relied upon by appellant, should be applied in that case as a matter of law. The court, in holding that there was permission, refused to apply those cases and said, at page 274:

"However, this view fails to take into consideration two important features of the instant case that were not present in the cases cited: (1) The existence of the relationship of employer and employee as noted in the case of *Burgess* v. *Cahill,* 26 Cal.2d 320, 324 [158 P.2d 393]; and (2) the fact that the trial court with apparent reason refused to give credence to much of the testimony of the defendants relative to the imposition of restrictions on the general use of the pickup. . . .

"From these decisions it clearly appears that,. in a situation such as this, the fact that the car was owned by appellant and was being driven by his employee, together with other factors (hereinafter mentioned), was sufficient to permit the trial court to infer that the vehicle was being driven with the permission of the appellant owner."

In *Brown* v. *Aldrich, supra,* the facts are more analogous to the facts in the instant case. There, the employer owned several ranches. He employed Mexican nationals who lived on one of the ranches. Three of the Mexicans took an unlicensed truck owned by the employer, from the ranch where they lived and drove to a town to drink beer. Upon returning they became involved in an accident. The evidence showed that one of the Mexicans had previously used the truck on and between the employer's ranches. The court held the case indistinguishable from the case of *Flemmer* v. *Monckton, supra,* and likewise held that the implied permission existed. (See, also, *Bayless* v. *Mull,* 50 Cal.App.2d 66, 72 [122 P.2d 608].) In the light of the authorities cited, and applying them to the facts of this case, the jury was justified in finding that there was no restriction of use which negatived the implied permission of use at the time and place of the collision herein involved.

After argument and before the jury retired, counsel stipulated that in the event the verdict was against the defendant Ceniglis that there has been a motion for a judgment notwithstanding the verdict made, which would be settled by the court "because I have no desire to stay here at night if

counsel will stipulate to that." Thereafter, on April 17, a verdict was received, read and recorded. On April 18, the clerk entered a judgment· on the verdict and on April 25, notice of entry of judgment was given. On May 1, notice of intention to move for a new trial was made on all statutory grounds. On May 1, counsel for the respective parties stipulated in writing that the "motion for a judgment notwithstanding the verdict made by defendant . . . with reservation by stipulation, prior to entry of judgment on the verdict, may be heard and considered by the court at the same time as the motion for a new trial." On July 12, the court denied the first motion, denied the second motion, and in doing so reduced the verdict in favor of plaintiff Pauline Reed from $3,500 to $2,000.

On this appeal defendant now argues that the failure of the court to consider and determine the first motion before entry of judgment requires a reversal of that judgment; that under the provisions of section 629, Code of Civil Procedure, the court was compelled to determine that motion before any judgment could be entered; that since that motion was determined on July 12, the judgment entered on April 18 was premature and void, citing *Shapiro* v. *Equitable Life Assurance Society,* 76 Cal.App.2d 75, 99 [172 P.2d 725].

Section 664 of the Code of Civil Procedure provides:

"When trial by jury has been had, judgment must be entered by the clerk, in conformity to the verdict, within twenty-four hours after the rendition of the verdict . . . unless the court order the case to be reserved for argument or further consideration, . . . When a motion for judgment notwithstanding the verdict is pending, entry of judgment in conformity to the verdict shall be *automatically stayed* until the court has rendered its decision upon the motion. . . ."

*Shapiro* v. *Equitable Life Assurance Society, supra,* relied upon by appellant, was an action for an injunction and damages. The question of damages was submitted to the jury. Its verdict did not affect the equitable issues which were yet to be determined by the court upon findings of fact made by it. The clerk, without authority, entered a judgment on the verdict as to damages while the equitable issues remained to be determined and which had not been determined at the time the verdict was rendered. The court in that instance held that the trial of the action had not been concluded when the verdict of the jury was rendered; that two judgments in the same action were not contemplated; and that the judg-

ment entered on the verdict was premature and void. Such is not the case here.

The language of section 664, *supra,* seems clear. The ministerial act of the clerk in entering the judgment before the decision of the trial court on the motion for judgment on the verdict has been performed. Under the mandatory provisions of the statute such entry "shall be *automatically stayed* until the court has rendered its decision upon the motion." Such a judgment is ineffectual during that period. While the proper procedure would have been to have delayed the entry of such a verdict until the trial court had ruled on such motion, it cannot be said that the ministerial act of the clerk in entering such a judgment prior to a determination of the motion would warrant a reversal of the judgment as entered. The entry was merely stayed until there had been a ruling on the motion. By written stipulation, the parties agreed that the motion for judgment notwithstanding the verdict could be heard after the date of the entry of the judgment and in conjunction with the motion for new trial. We have reviewed the evidence based on the appeal from the order denying judgment notwithstanding the verdict, and the order denying the motion of new trial. Since the evidence fully supports the trial court's order denying to defendants a judgment notwithstanding the verdict, no prejudicial error resulted. (*Christerson* v. *French,* 180 Cal. 523, 525 [182 P. 27]; *Phipps* v. *Superior Court,* 32 Cal.App.2d 371, 375 [89 P.2d 698]; *Beck* v. *Pasadena Lake etc. Water Co.,* 130 Cal. 50 [62 P. 219].)

Although counsel for appellant does not raise the question of excessive damages in his brief, on oral argument he suggests examination of the evidence on this claim. The resultant injuries to Judd A. Reed, as disclosed by the record, were skinned forehead; two small cuts on his right knee with permanent scar which could be removed by successful surgery; and a left leg and chest bruise. At the time of the accident his chest bent the steering wheel down. He suffered soreness and pain in the region of his chest for about seven days. He lost six days' work and was making about $12 per day. His car was laid up for repairs from September 17 to December 4, 1945. He had used it in going to and from his work in orchard spraying and taking his wife to work. Hospital, X-ray, doctor and ambulance bills amounted to $123.25. His car repairs amounted to $247.83.

Mrs. Reed's injuries were lacerations through the lower lip extending down through the chin, lacerations extending from the inner canthus of the eye, paralleling the nose, and extending for about 1½ inches; superficial muscle and nerves surrounding the eye were severed. There were deep lacerations of the right eyebrow. Shattered glass cuts were about the face. A 2½-inch laceration was above the right knee about ½ inch deep. She carries certain scars which the doctor described as probably permanent in character. She was in the hospital two days and lost 17 days in her work at a wage of $6.00 per day. She suffered pain from her face injuries for about three weeks and still suffered pain from her knee at the time of trial. Her knee "gives way" on occasions when she walks; her sight is impaired to some extent; and she suffers from headaches a great deal.

The judgment in favor of Mrs. Reed for $2,000 cannot be said to be excessive. The judgment in favor of Mr. Reed for $600 did not suggest any such influence of passion or prejudice on the part of the jury as would authorize this court to reverse or modify it. (*Butler* v. *Allen,* 73 Cal.App.2d 866 [167 P.2d 488]; *O'Meara* v. *Haiden,* 204 Cal. 354 [268 P. 334, 60 A.L.R. 1381].)

Order and judgment, as reduced, are affirmed.

Barnard, P. J., and Mussell, J., concurred.

Judgment and opinion were modified to read as above December 9, 1948.