[Civ. No. 4393. Fourth Dist. Feb. 26, 1953.]

JACKIE LEE MIZE, a Minor, etc., Respondent, v. JAMES JORDEN, JR., et al., Defendants; J. B. JOHNSON, Appellant.

Walter L. Maas, Jr., for Appellant.

Morris B. Chain and Dustin Jameson for Respondent.

BARNARD, P. J.—The minor plaintiff was injured on June 18, 1950, in a collision between a motorcycle on which he was riding and a truck driven by the defendant Jorden and owned by the defendant Johnson.

The complaint alleges that Jorden was driving the truck with the permission and consent of Johnson, which was denied in the answer. Jorden defaulted and the case went to trial against Johnson before the court without a jury. Judgment was entered in favor of the plaintiff and Johnson has appealed on the sole ground that the evidence is not sufficient to sustain the court's finding that the truck was being operated with his permission or consent.

Citing such cases as *Herbert* v. *Lankershim,* 9 Cal.2d 409 [71 P.2d 220], and *Hall* v. *Osell,* 102 Cal.App.2d 849 [228 P.2d 293], the appellant contends that the only evidence of permissive use is found in the testimony of Jorden; that his testimony is obviously false and inherently improbable and should be disregarded; that his testimony thus becomes so unsubstantial as to furnish no reasonable support to the judgment; and that a reasonable view of the testimony necessarily leads to the conclusion that the respondent failed to prove permissive use by a preponderance of the evidence. The respondent contends that the question of permissive use was one of fact; that an inference of permissive use arises from Jorden's status as an employee of the appellant; that the credibility of the witnesses was a matter for the trial judge to determine; that there is no inherent improbability in the testimony of Jorden; and that the evidence was sufficient to support the finding in question.

Jorden testified that prior to June 18, 1950, he had used this truck about five or six times after working hours on his own personal business; that Johnson never said anything to him about this use or told him that he could not use it; that Johnson saw him with the truck on one occasion when he was "just socializing," and Johnson never said anything about it; that about a week before the accident Johnson told him he could use the truck on the day of the accident to go swimming at a park; that he had seen the other truck drivers who worked for Johnson use the trucks on their own business "lots of times"; that he had seen the other drivers use the trucks for "joy-riding" when Johnson was right there; and that he did not know whether Johnson had told the other drivers, at meetings, not to use the trucks "but he never did tell me that." He further testified that he used the truck to haul some potatoes on the morning of June 18,

that he brought the truck back to the appellant's yard about noon and changed the oil in it, and that he then took the truck out to go to this park for the purpose of swimming.

Johnson testified that he knew the truck was brought back from work; that after the job of hauling potatoes was finished he did not give Jorden any permission to make any further use of the truck on that day; that he had had no conversation with Jorden prior to that time about his using the truck to go swimming, and had not given him permission to do so; that he had never given Jorden permission to use the truck for his personal use, and had no knowledge that Jorden had ever so used it; that he had given none of the truck drivers permission to use the truck for personal matters; that he had meetings of the truck drivers every month, at which Jorden was present, and at which he told the drivers that the trucks were not to be used except on company business; and that he told Jorden "daily" not to use the truck for his personal use.

The appellant's foreman, Billingsley, testified that he was in charge of the yard that day; that Jorden, after finishing the work, brought the truck back into the yard about 11 a. m.; that he noticed Jorden working around the truck, changing the oil; that he went in "back" for a few minutes; and that the first thing he knew the truck "was gone." He and four other employees all testified to the effect that at regular meetings Johnson had told the employees that they must not use the trucks for personal use; that Jorden was present at these meetings; and that they had not seen any driver use a truck after working hours or on his own personal business. However, two investigators testified that on October 11, 1950, they had a talk with Billingsley in which he stated that both he and Johnson had on many occasions noticed that the trucks were not on the parking lot during periods when there was no work for them, that on many occasions Jorden had driven the truck off the lot when there was no work for him to do, and that on these occasions no one said anything to Jorden about driving the truck for his own purposes; that they wrote this statement up and took it to Billingsley; that they read it to him and asked him to sign it; and that he said the statement was correct but he had thought it over and would not sign it. This unsigned statement was introduced in evidence.

There was some documentary evidence introduced by the appellant. Exhibit G is a report to his insurance carrier dated

June 19, the day after the accident, and signed by the appellant. On the first page appears a general description of the truck involved, the driver, and the circumstances of the accident. A question as to whether the driver was on business for the appellant at the time of the accident is answered "Yes." Another question as to whether the car was being used with appellant's permission is answered "Yes." On the second page of the report is set forth a statement made and signed by the driver Jorden. In describing this accident he there stated "I was driving Mr. Johnson's truck, & had been hauling spuds from Edison & I had lost a rope off of my truck and was going to look for it." Jorden testified that Johnson told him to tell this last rope story to the insurance man, saying that "he won't pay off for joy riding." Exhibit E is a statement given to an insurance adjuster on July 19, 1950, and signed by Jorden. In this statement he says it is his desire to retract any and all previous statements made by him concerning this accident; that the previous statement he made about taking the truck out to look for a rope was false; that on the evening of June 17th, he phoned to Johnson and told him he wanted to use the truck; that Johnson replied that if he let him borrow the truck all the men would want to do so; that he said "Yeah, I know that"; that Johnson replied, "Well, all right"; that he thought Johnson meant it was all right for him to use the truck; that Johnson did not know when he would use the truck; that on June 18th, he started to haul the potatoes at 9:30 a.m., finished the job and returned to Johnson's place at 1 p.m.; that he then took the truck for pleasure without Johnson's permission; and that Johnson said nothing to him after the accident about his using the truck to go to a park. Exhibit F is a statement made by Jorden on July 26, 1950, and sworn to before a notary public on that date. In this Jorden states that it is his desire to retract any statement previously made by him concerning a telephone conversation with Johnson on June 17th; that this conversation related only to the hauling of the potatoes; that at no time had he had permission to use any of Johnson's trucks for pleasure or other than business; that he had no expressed or implied permission for such use at any time, except once when he was allowed to haul some furniture for himself; that he especially had no permission to use the truck for pleasure on June 18th; and that this present statement "is the only true happening as relating to the telephone conversation and permission to use the" truck. Johnson testified that he was with Jorden when Jorden made this statement on July 26th, and

that he then took Jorden to the notary public for the purpose of having it sworn to. Johnson argues in his brief that it does not appear how this statement could have helped him since he would have been covered for any liability had his insurance company ˙not gone into receivership.

█ Ordinarily, the question as to whether or not a vehicle was used with the permission of the owner is one of fact, to be determined by the trial court from circumstances in evidence and the inferences reasonably to be drawn therefrom (*Casey* v. *Fortune,* 78 Cal.App.2d 922 [179 P.2d 99] ); █ the trial court is the ˙sole judge of the credibility of the witnesses; and where there is any substantial support for a finding of permissive use, such a finding will not be disturbed on appeal. (*Flemmer* v. *Monckton,* 73 Cal.App.2d 271 [166 P.2d 380].) █ Obviously, Jorden was not telling the truth at all of the times involved in his statements and in his testimony. He told conflicting stories as to whether or not this was a business trip and with respect to the matter of permission, and the trial court was compelled to pass upon which of these stories should be believed. The other evidence would naturally throw considerable light on this, and assist the court in deciding which of Jorden's stories was to be accepted. When Johnson signed his report to the insurance company, the next day, he stated that the truck was being used at the time of the accident with his permission. While it might be argued that at that time he believed Jorden's statement that he had gone back to look for a rope, he had had a full day in which to find out what the facts were, and if the rope story had been true the yard foreman would probably have known why the truck was again taken out. The evidence shows that Johnson had considerable to do with some of the statements made by Jorden, and justifies the inference that the fact that the insurance company had gone into receivership had affected the statements which were made at various times. The court could consider all of these matters in considering the conflicts and in weighing the credibility of the witnesses. There is no such inherent improbability in the evidence as would entitle a reviewing court to hold that the testimony of Jorden must be disregarded in its entirety. The entire matter was a factual one and while the evidence is conflicting it sufficiently supports the finding attacked.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.