406 P.2d 805

Dannard STEELE, also known as Dan Steele, Plaintiff-Appellant,

v.

John NAGEL, and Louisa Nagel, a widow dba Nagel Beverage Co., and Virgil Clampett, Defendants-Respondents.

No. 9521.

Supreme Court of Idaho.

Oct. 20, 1965.

C. H. Higer, Emmett, Marcus, Leggat & Marcus, Boise, for appellant.

Elam, Burke, Jeppesen & Evans, Boise, for respondents.

**McQUADE, Chief Justice.**

This is an action for personal injuries and damages to an automobile brought by appellant Dannard Steele against respondents Virgil Clampett and John Nagel and Louisa Nagel, doing business as Nagel Beverage Company, hereinafter referred to as Nagel. From a summary judgment entered in favor of Nagel, this appeal is brought. In support of and opposed to the motion for summary judgment were three affidavits and the depositions of Steele and Clampett. From these documents the following facts may be determined.

On August 28, 1961, at about 6 p. m. Steele was driving his automobile in an easterly direction on Wylie Lane in Boise, Idaho. At a point just west of the intersection of Wylie Lane and State Highway 44, Steele collided with a pickup truck driven by Clampett and owned by Nagel. Clampett was employed by Nagel as a bottle sorter.

At the time of the accident and prior thereto, Clampett was accompanied by Jim Tyner, also employed by Nagel, and two female acquaintances. The girls had been visiting at the Nagel Beverage Company plant in Boise shortly prior to 5 p. m. At about 5 p. m. on this particular day, after finishing his work, Clampett, in the company of Tyner, took the pickup truck parked on Nagel's property for the purpose of driving the two girls home. After picking up the girls, the four proceeded to the residence of Clampett, where he changed from his working clothes. Clampett and Tyner then proceeded to take the girls to their residence on Wylie Lane.

Clampett turned left off Highway 44 onto Wylie Lane in a westerly direction while operating the truck at a high rate of speed. The truck struck a guardrail and then bounced over into the left lane of traffic, striking Steele's automobile.

The next morning Clampett saw Nagel and thereafter continued to work for Nagel and was still working for him when Clampett's deposition was taken December 10, 1963.

Nagel owned 10 or 11 trucks, which were kept in Nagel's parking lot adjoining the

bottling plant. According to Clampett's deposition, the keys were kept in the trucks at all times, which fact was common knowledge to all employees. On the sides of these trucks were words indicating they were owned by Nagel.

Though Clampett was primarily a bottle sorter, he had been called upon in the past to make deliveries for Nagel, at which time Mr. Nagel would accompany Clampett. On each occasion the same pickup truck had been used. Clampett had never driven any of the trucks alone for his own personal reasons. Occasionally, however, Nagel would drive Clampett on the latter's personal errands because Clampett did not own any vehicular means of transportation. Clampett stated that just prior to taking the truck on the particular occasion in question, he did not ask anyone's permission but did tell a Nagel truck loader, Roger Tomlinson, to tell Mr. Nagel that Clampett was going to use the truck.

The affidavits of one Johnnie Purvis and one Jack Earl allege that Clampett had been seen on prior occasions driving the truck on Highway 44 and on Wylie Lane near the scene of the accident. Clampett stated that he had never driven the pickup truck on Wylie Lane prior to the accident on August 28.

This action was commenced on January 9, 1963. In his complaint Steele alleges that Clampett was operating the pickup truck owned by Nagel "with the knowledge and consent of defendants, John Nagel and Louisa Nagel, and was acting as an employee, agent and servant of said defendants and within the scope of his employment."

By way of answer Nagel denied:

" * * . * that Virgil Clampitt operated the Nagel Beverage Co.'s vehicle with the consent and knowledge of said defendant or at the time and place of the accident he was acting in any way on their behalf or as an employee, agent, or servant of the defendants and state the facts to be that he had taken the truck of the defendant without their permission and without their knowledge after business hours; * * *."

In his answer Nagel demanded a jury trial.

Respondent Nagel filed a motion for summary judgment. Appellant then moved to strike the motion for summary judgment on the ground that there is no statutory provision in Idaho for the granting of the relief prayed for and for the further reason that the Supreme Court is without constitutional authority to establish any procedure for determination of rights other than those which are expressly granted by the legislature in the adjudication of rights between litigants. The motion to strike the motion for summary judgment was denied and the summary judgment was grant-

ed. Appellant has appealed from that judgment.

Appellant enumerates three assignments of error which can be grouped into two major contentions. The first is the denial of appellant's motion to strike respondents' motion for summary judgment. The second is the granting of respondents' motion for summary judgment.

As to the first contention, this exact issue has been decided in the recent Idaho cases of Allen Steel Supply Co. v. Bradley, 89 Idaho ——, 402 P.2d 394 (1965); and R. E. W. Const. Co. v. District Court of Third Jud. Dist., 88 Idaho 426, 400 P.2d 390 (1965). The motion to strike motion for summary judgment was properly denied.

Appellant's second contention is based upon Rule 56(c), I.R.C.P., which reads in part:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

This rule must be construed in conjunction with Rule 56(e), I.R.C.P. See 3 Barron & Holtzoff, Federal Practice and Procedure, §§ 1232.1, 1235 and 1235.1 (1958); 6 Moore, Federal Practice, ¶ 56.11 [4] (2d ed. 1953) and ¶ 56.22 (Supp.1964).

Appellant contends that this action was initiated under I.C. § 49–1404 and that consent, either express or implied as set out therein, is a genuine issue of material fact which should be resolved at trial and not by way of summary judgment. The pertinent portion of I.C. § 49–1404 reads:

"Owner's tort liability for negligence of another—Subrogation.—1. Responsibility of owner for negligent operation by person using vehicle with permission—Imputation of negligence. Every owner of a motor vehicle is liable and responsible for the death of or injury to a person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, expressed or implied, of such owner, and the negligence of such person shall be imputed to the owner for all purposes of civil damages."

On motion for summary judgment the trial court must determine if there are any material factual issues which should be resolved before the trier of facts. The trial judge on such motion does not resolve factual issues or weigh the evidence. Valentine v. South Coast Corporation, 218 F.Supp. 148 (E.D.La.1963); Cox v. Amer-

ican Fidelity & Casualty Co., 249 F.2d 616 (9th Cir. 1957); Sutton v. Brown, 85 Idaho 104, 375 P.2d 990 (1962); Jack v. Fillmore, 85 Idaho 36, 375 P.2d 321 (1962); In re Killgore's Estate, 84 Idaho 226, 370 P.2d 512 (1962); Merrill v. Duffy Reed Construction Co., 82 Idaho 410, 353 P.2d 657 (1960).

Summary judgment "may be loosely defined as a judgment decreed by the court in a case pending before it when as a matter of law the proceedings show that there is no issue between the parties." Guerrero v. American-Hawaiian Steamship Company, 222 F.2d 238 (9th Cir. 1955).

■ It is consistently held that summary judgment "should be invoked with caution to the end that litigants may be afforded a trial where there exists between them a bona fide dispute of material facts. And the pleadings upon which the motion is based are to be liberally construed in favor of the party against whom the motion is directed." Alaniz v. United States, 257 F.2d 108 (10th Cir. 1958). See also Allison v. Mennonite Publications Board, 123 F.Supp. 23 (W.D.Pa.1954); and Purity Cheese Co. v. Frank Ryser Co., 153 F.2d 88 (7th Cir. 1946).

In support of appellant's contention he argues that I.C. § 49–759 imposes implied consent upon respondents. Said section reads:

"No person driving or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition, removing the key, and effectively setting the brake thereon and, when standing upon any grade, turning the front wheels to the curb or side of the highways."

■ This argument is without merit. The above-cited statute in and of itself does not imply consent for an employee to use a vehicle owned by an employer and left unattended with the key remaining in the ignition. This is not to say, however, that consent to use a vehicle might fairly be implied in the proper circumstances from the fact that keys are left in an unattended vehicle.

The protection provided by the above statute is twofold. It is a deterrent to theft and is a safety device designed to protect members of the public from damage caused by the operation of a motor vehicle by an unauthorized person. The above statute is further inapplicable to the facts presented by the case at bar by the following provision of the Idaho statutes, I.C. § 49–522:

"The provisions of this act relating to the operation of vehicles refer exclusively to the operation of vehicles upon highways except: * * *" (The exceptions have no application.)

See Domingo v. Phillips, 87 Idaho 55, 390 P.2d 297 (1964).

The sole remaining question thus is if there is a genuine issue of fact as to whether respondent Clampett was using and operating the motor vehicle with the permission, expressed or implied, of its owner, respondent Nagel. This issue was squarely raised by appellant's complaint, which alleged that the pickup truck was taken by Clampett with Nagel's knowledge and consent, and by respondent's answer, which denied the same.

Appellant urges in his brief that the question of use of the pickup in the scope of Clampett's employment is only incidental to the inquiry before the court as it relates to amount of damages recoverable under I.C. § 49–1404. Subsection 2 of said section limits the liability of any owner for imputed negligence to $5,000 for death or injury to any one person in any one accident not arising through the relationship of principal and agent or master and servant.

California enacted a "driving-with-permission" statute which is in substantially the same language as the Idaho provision. Cal. Vehicle Code § 17150 (formerly Cal.Vehicle Code § 402, St.1937).

The California court held that the fact the particular use which the permittee was making of a vehicle at the time of the accident was one not within the scope of his employment would not affect the applicability of Section 402, making the owner liable for injuries caused by the vehicle used with his permission, except so far as such fact may be deemed to bear on the question of the owner's permission and the amount of the recovery. Brown v. Aldrich, 77 Cal. App.2d 693, 176 P.2d 89 (1947); Burgess v. Cahill, 26 Cal.2d 320, 158 P.2d 393, 159 A.L.R. 1304 (1945); Souza v. Corti, 22 Cal.2d 454, 139 P.2d 645, 147 A.L.R. 861 (1943); Bayless v. Mull, 50 Cal.App.2d 66, 122 P.2d 608 (1942). The court in the Brown case reasoned that were the rule otherwise, and limited to a respondeat superior liability, the statute would be of little benefit to innocent third persons injured by reason of the fact that the owner of the vehicle placed a dangerous instrumentality in the hands of another.

In regard to the precise issue of consent or permission, the California courts have uniformly held that the element of permission is necessary to a determination of liability under Section 402 and is a question of fact to be proved at the trial. Irvine v. Wilson, 137 Cal.App.2d Supp. 843, 289 P.2d 895 (1955); Mize v. Jorden, 116 Cal.App.2d 301, 253 P.2d 702 (1953); Scheff v. Roberts, 35 Cal.2d 10, 215 P.2d 925 (1950); Reed v. Cortez, 88 Cal.App.2d 416, 198 P.2d 911 (1948); Hobbs v. Transport Motor Co., 22 Cal.2d 773, 141 P.2d 738 (1943).

This general rule is further stated in 8 Am.Jur.2d § 605, at p. 157:

"There is no formula which will aid the courts in deciding whether a motor vehicle was operated with the implied permission or consent of the owner, but it is rather a question of fact for the jury, unless the evidence is such that only one reasonable conclusion is deducible therefrom."

The California court has gone a step further and holds that where evidence shows that a vehicle was being driven by the owner's employee at the time of the accident, the jury may infer that the employee was operating the vehicle with the owner's permission within the statute imputing negligence to the owner for all purposes of civil damages. Blank v. Coffin, 20 Cal.2d 457, 126 P.2d 868 (1942). See also Elkinton v. California State Auto. Ass'n, Int. Ins. Bur., 173 Cal.App.2d 338, 343 P.2d 396 (1959); Scheff v. Roberts, supra; Reed v. Cortez, supra; Brown v. Aldrich, supra; and Bushnell v. Yoshika Tashiro, 115 Cal. App. 563, 2 P.2d 550 (1931).

This inference, of course, may be rebutted, but as Justice Traynor reasoned in the Blank case where a party has shown primary facts (the employer-employee relationship) from which a jury can reasonably infer that the material fact exists (permission), such party is entitled to have the jury decide the issue. In the Blank case the appellant brought an action against the employee driver and the owner of the vehicle

for personal injuries under Vehicle Code § 402. The trial court directed a verdict in favor of the owner of the vehicle and the California court reversed the judgment and said, "An inference is a conclusion as to the existence of a material fact that a jury may properly draw from the existence of certain primary facts." 126 P.2d at 870.

In the case of Elkinton v. California State Auto. Ass'n, Int. Ins. Bur., supra, the First District Court in California said:

"Where the issue of implied permissive use is involved, the general relationship existing between the owner and the operator is of paramount importance. Where, for example, the parties are related by blood [Cases cited], or marriage [Case cited], or where the relationship between the owner and the operator is that of principal and agent [Cases cited], weaker direct evidence will support a finding of such use than where the parties are only acquaintances [Case cited], or strangers [Cases cited]. Of the above cases only those falling within the last group (mere acquaintances and strangers) hold that the evidence of permissive use was insufficient as a matter of law." 343 P.2d at 399.

Stronger compulsion for giving the case to the jury is warranted when other factors exist which might tend to imply the existence of the owner's permission to use a

vehicle. Such factors existed in Brown v. Aldrich, supra. There the court said:

"In addition to the employer-employee relationship the evidence discloses the existence of other factors which justified the trial court in drawing the inference of permissive use: the circumstance that the car was allowed to remain unlocked at the camp; that no check was made upon the gas, or oil, or mileage to determine whether or not it was used off the ranch; that said car frequently had been used on the highways on inter-ranch and other business while it was unlicensed, and on at least one occasion had been accompanied by Aldrich himself; and that neither Gonzales nor Leon was discharged from employment after the alleged disobedience of orders, but was retained in Aldrich's employ as before." 176 P.2d at 90.

The record before the trial court showed that the keys were kept in the trucks at all times and such fact was common knowledge to all of Nagel's employees; Clampett was also retained as an employee of Nagel after the accident, at least up until the time of the taking of Clampett's deposition; and Clampett had driven and had been observed operating a Nagel truck. These factors, together with the existence of the employer-employee relationship between Nagel and Clampett, compel this court to hold that it was error to find as a a matter of law that permission did not exist.

Appellant is entitled to have his evidence heard on the question of consent to the use of the pickup truck. We conclude that the trial court erred in holding that the record shows there is no issue as to any material fact.

The summary judgment is reversed and the cause remanded for further proceedings consonant with the views herein expressed.

Costs to appellant.

McFADDEN, TAYLOR, SMITH and KNUDSON, JJ., concur.