852 P.2d 485

**ALLIED GROUP INSURANCE COMPANY, a foreign corporation, Plaintiff–Respondent,**

v.

**Robert Garcia, an individual, James Bartrop, an individual, Defendants,**

**and**

**ALLSTATE INSURANCE COMPANY, a corporation, Defendant–Appellant.**

No. 19148.

Supreme Court of Idaho, Boise, December 1992 Term.

April 30, 1993.

**734**

Brady Lerma & Thomas, Chartered, Boise, ID, for appellant. Rebecca A. Broadbent, argued.

Hollifield, Tolman & Bevan, Twin Falls, ID, for respondent. G. Richard Bevan, argued.

JOHNSON, Justice.

This is a motor vehicle liability insurance case.

The issues presented concern an insurance policy that covers family members while driving an insured vehicle, but excludes anyone driving an insured vehicle without a reasonable belief that the person has permission to do so.

We hold:

1. The insurance policy is not ambiguous.

2. The policy violates I.C. § 49–1212(1)(b) by limiting coverage to persons driving the insured vehicle with a reasonable belief of permission to do so.

3. A genuine issue of material fact exists whether the driver of the insured vehicle had implied permission to operate the vehicle.

Therefore, we reverse the summary judgment granted by the trial court and remand the case for further proceedings.

## I.

## THE BACKGROUND AND PRIOR PROCEEDINGS.

Robert Garcia was driving an automobile owned by his parents (the Garcias) when he struck a pedestrian, James Bartrop. Robert was twenty-eight at the time of the accident and was living with the Garcias. The Garcias had insured the vehicle with Allied Group Insurance Company (Allied). Bartrop carried uninsured motorist coverage with Allstate Insurance Company (Allstate).

The relevant definitions in Allied's policy state:

> "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.
>
> . . . .

"Insured" as used in this Part means: ... You or any "family member" for the ownership, maintenance or use, including loading and unloading, of any auto or "trailer."

Allied's policy also contains the following exclusion (the entitlement exclusion):

We do not provide Liability Coverage for any person:

. . . .

... Using a vehicle without a reasonable belief that that person is entitled to do so.

Allied sought declaratory judgment against Robert that Allied had no duty to defend or indemnify Robert against Bartrop's claim. By amendment, Allied later included Allstate and Bartrop as defendants in order to determine Robert's coverage under the Allied policy.

Allied sought summary judgment, contending no genuine issue of material fact existed. Allied argued that the insurance policy was unambiguous and that under the entitlement exclusion Robert was not covered, because Robert did not have a reasonable belief that he had permission to use the vehicle. Allstate also moved for summary judgment, arguing that Robert was covered as a family member as a matter of law.

The trial court granted summary judgment in Allied's favor, stating that based on the uncontested facts and a clear reading of the policy, the policy did not cover Robert, because Robert did not have a reasonable belief that he was entitled to use the vehicle. Allstate appealed.

## II.

### THE POLICY IS NOT AMBIGUOUS. THE ENTITLEMENT EXCLUSION APPLIES TO FAMILY MEMBERS.

■ Allstate asserts that the entitlement exclusion is ambiguous on the question of its application to family members. We disagree.

One provision of the policy states that family members are insured. The entitlement exclusion states, however: "We do not provide Liability Coverage for any person ... [u]sing a vehicle without a reasonable belief that that person is entitled to do so." This exclusion is not ambiguous. It clearly excludes family members who are driving the vehicle without a reasonable belief of permission.

In addition to the clear language of the entitlement exclusion, the application of the entitlement exclusion to family members is demonstrated by a preceding section of the policy's list of exclusions. This exclusion states that it does not apply to family members. The entitlement exclusion at issue in this case, however, does not state that the entitlement exclusion does not apply to family members.

Therefore, we conclude that the entitlement exclusion applies to family members.

## III.

### THE ENTITLEMENT EXCLUSION'S FOCUS ON THE DRIVER'S STATE OF MIND VIOLATES I.C. § 49–1212(1)(b) TO THE EXTENT THAT IT DENIES COVERAGE WHEN THE OWNER HAS GIVEN IMPLIED OR EXPRESS PERMISSION TO THE DRIVER TO OPERATE THE VEHICLE.

■ Allstate asserts that the entitlement exclusion violates I.C. § 49–1212(1)(b). We agree. The entitlement exclusion focuses on the driver's state of mind. I.C. § 49–1212(1)(b), on the other hand, requires that an owner's policy of liability insurance shall insure the named person and any other person using the insured vehicle with the express or implied permission of the named person.

The prior decisions of this Court concerning implied permission do not focus on the driver's state of mind, but rather on the relationship of the driver and the owner and on the owner's conduct in relationship

to the driver's access to the vehicle. *E.g., Farm Bureau Mut. Ins. Co. v. Hmelevsky,* 97 Idaho 46, 49–51, 539 P.2d 598, 601–03 (1975); *Eckels v. Johnson,* 96 Idaho 264, 267–68, 526 P.2d 1100, 1103–04 (1974); *Steele v. Nagel,* 89 Idaho 522, 530–31, 406 P.2d 805, 809–10 (1965); *Abbs v. Redmond,* 64 Idaho 369, 372–73, 132 P.2d 1044, 1045–46 (1943).

*In Hmelevsky,* the Court stated the policy embodied in I.C. § 49–1521(b) (now I.C. § 49–1212(1)(b)) required that motor vehicle insurance policies are subject to the requirements of the statute:

> I.C. § 49–1521(b) is part of the motor vehicle safety responsibility act and provides that a vehicle owner's policy "shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured." Policies such as that issued by both Farm Bureau and Farmers are subject to the requirement. I.C. § 49–1521. Motor vehicle insurance policies must be construed in conformance with the mandate of that act. *Farmers Insurance Exchange v. Wendler,* 84 Idaho 114, 368 P.2d 933 (1962). The stated policy and purpose of that safety responsibility act "is to protect the public against irresponsible drivers." *Farmers Exchange, supra,* 84 Idaho at 119, 368 P.2d at 935.

97 Idaho at 49, 598 P.2d at 601; *cf. Farmers Ins. Group v. Reed,* 109 Idaho 849, 712 P.2d 550 (1985).

The entitlement exclusion violates the provisions of I.C. § 49–1212(1)(b), and is, therefore, not enforceable.

Allied attempts to salvage the entitlement exclusion on the ground that this Court must assume that the policy was submitted to and approved by the director of the state department of insurance, and, accordingly, the insurance policy is presumed to be in harmony with public policy under *Hansen v. State Farm Mut. Auto Ins. Co.,* 112 Idaho 663, 667, 735 P.2d 974, 978 (1987). In *Hansen,* however, the Court concluded its discussion of the presumption arising from an assumption that the director had approved the form of the policy by stating:

> In the absence of proof that a policy contains provisions which conflict with express legislative directives, the Director's approval of an insurance policy form is an administrative determination that the policy form is in the "public interest."

*Id.* at 668, 735 P.2d at 979.

To the contrary in this case, as we have concluded above, the entitlement exclusion conflicts with an express legislative directive in I.C. § 49–1212(1)(b). Therefore, the director's approval did not determine that the policy form is in the public interest.

## IV.

### A GENUINE ISSUE OF MATERIAL FACT EXISTS WHETHER ROBERT HAD IMPLIED PERMISSION.

■ Allstate asserts that the trial court should not have granted summary judgment in favor of Allied, because there is a genuine issue of material fact whether Robert had implied permission to use his parents' automobile. We agree.

In *Steele,* the Court reversed a summary judgment and said that "the element of permission ... is a question of fact to be proved at the trial." 89 Idaho at 529, 406 P.2d at 809. The Court continued:

> This general rule is further stated in 8 Am.Jur.2d § 605, at p. 157:
>
> "There is no formula which will aid the courts in deciding whether a motor vehicle was operated with the implied permission or consent of the owner, but it is rather a question of fact for the jury, unless the evidence is such that only one reasonable conclusion is deducible therefrom."
>
> In the case of *Elkinton v. California State Auto. Ass'n, Int. Ins. Bur.,* [173 Cal.App.2d 338, 343 P.2d 396 (1959)], the First District Court in California said:
>
> "Where the issue of implied permissive use is involved, the general relation-

ship existing between the owner and the operator is of paramount importance. Where, for example, the parties are related by blood [Cases cited], or marriage [Case cited], or where the relationship between the owner and the operator is that of principal and agent [Cases cited], weaker direct evidence will support a finding of such use than where the parties are only acquaintances [Case cited], or strangers [Cases cited]. Of the above cases only those falling within the last group (mere acquaintances and strangers) hold that the evidence of permissive use was insufficient as a matter of law." 343 P.2d at 399.

*Id.* 89 Idaho at 529–30, 406 P.2d at 809–10 (alteration in original).

Following this same rationale, the Court again reversed a summary judgment in *Eckels*, another case involving implied permission. In doing so, the Court said:

On appeal from an order granting summary judgment, this [C]ourt must construe the record presented to the trial court liberally in favor of the party opposing the order and accord [this party] the benefit of *all inferences which might reasonably be drawn therefrom.*

It is undisputed that it was the defendant's son who was driving the defendant's vehicle at the time of the accident. From this primary fact (father-son relationship), an inference may reasonably be drawn that the driver was operating the vehicle with the owner's consent.

*Eckels*, 96 Idaho at 267, 526 P.2d at 1103 (emphasis in original) (citations omitted). The Court then quoted the same passage from *Elkinton* the Court had quoted in *Steele*, and added the following passage from *Elkinton*:

"Where, as in the instant case, the relationship between the owner and operator is that of parent and child, the evidence should be reviewed in the light of the authority which the law confers upon the parent to control the child, and the authority to administer restraint and punishment in order to compel obedience to reasonable and necessary directions. If

parents are indifferent to their parental obligations in this regard, their children are apt to accept such indifference as tacit permission to do acts which should, under the circumstances, have been controlled or forbidden. Juries are entitled to draw the same inference. In *Casey v. Fortune,* 78 Cal.App.2d 922, 179 P.2d 99 [1947], for example, a finding of implied permission was sustained despite the fact that the mother had 'persistently' forbidden her son to drive her automobile. In *Pierce v. Standow,* 163 Cal.App.2d 286, 329 P.2d 44, 45 [1958] both mother and son testified that the mother had on several occasions forbidden the son to drive the automobile. The mother testified further that her son had no driver's license, and that she did not know that he had ever driven an automobile. The court said, however, 'The admitted fact that appellant daily entrusted to her son the keys to the automobile thus putting it in his power to drive the car at will is, in our judgment, sufficient to support the inference drawn by the trial court that she impliedly consented to his doing so." ' 343 P.2d at 399–400.

*Id.*

The *Eckels* Court concluded:

Thus, in the case at bar, the question of implied consent remained a genuine issue of material fact, even though the plaintiff did not controvert the defendant's evidence to the effect that prior to the accident he had instructed his son not to drive the vehicle.

*Id.*

Although the opinion in *Eckels* does not indicate the age of the son, the daughter in *Elkinton* was fifteen, the son in *Pierce* was seventeen, and the son in *Casey* was sixteen. This, together with the passage from *Elkinton* concerning the legal right of a parent to control a child that was quoted by the *Eckels* Court, convinces us that the *Eckels* Court predicated its holding on the relationship between a parent and a minor child. In this case, Robert was twenty-eight years old at the time of the accident. Although he was living in his parents' home, *Eckels* does not dictate that

we infer that Robert was operating the Garcias' automobile with their implied permission merely because he is their son. While the fact that Robert was the Garcias' son does not require an inference of implied permission, it is one of the important factors to consider in determining whether there is a genuine issue of material fact concerning implied permission.

In *Eckels,* the Court buttressed its reversal of the summary judgment by adding to its analysis of the father-son relationship the implication of other factors:

> In this case, moreover, other factors are present which tend to indicate the existence of the defendant-owner's implied consent to the use of his vehicle, namely: (1) the defendant's son had been permitted to drive the vehicle in the past; (2) the ignition key to the vehicle was kept in it all times; (3) the defendant did not check the gas, oil, or mileage to see whether the vehicle was being used without his consent; and (4) the son also had express permission to use another vehicle belonging to the defendant.

*Eckels,* 96 Idaho at 267–68, 526 P.2d at 1103–04 (Citing *Abbs* and *Steele.*).

The driver in *Abbs* was the owner's fourteen-year-old son. The parents testified that they had not given their son permission to drive their vehicle on the occasion when the accident occurred, although they had allowed him to drive the car on other occasions, including prior occasions the same day as the accident. The Court rejected the lack of express permission of the parents as dictating a determination that the parents had not given implied permission to their son and said the question was one for the jury to decide. 64 Idaho at 372–73, 132 P.2d at 1045–46.

In *Steele,* the Court echoed the holding in *Abbs* when it stated that implied permission is a question of fact for the jury, unless the evidence is subject to only one reasonable conclusion that may be deduced from the evidence. 89 Idaho at 530, 406 P.2d at 809. In *Eckels,* the Court again echoed this theme when, after noting the factors quoted above, it said: "The inferences which might reasonably be drawn from these fac-

tors compel the conclusion that a genuine issue of material fact—that of implied consent—remains for trial." 96 Idaho at 268, 526 P.2d at 1104.

The facts presented on the motions for summary judgment in this case do not lead to only one reasonable conclusion. Inferences may reasonably be drawn from these facts that create a genuine issue of material fact concerning implied permission:

1. Robert was living in his parents' household at the time of the accident.
2. The Garcias kept the keys to the car on a nail in the kitchen.
3. The Garcias did not check the gas, oil, or mileage to see if Robert had been driving the car.
4. The Garcias had not told Robert that he could not use the car.
5. On the day of the accident, Mrs. Garcia noticed that Robert, the automobile and the keys were gone, but took no action.

Allied argues that Robert did not have implied permission because Robert stated in a sworn statement that he did not have permission and that he would not ask his parents because he knew that they would not give permission. In addition, Allied points out that Robert was not listed on the Garcias' policy and did not have a valid drivers' license. Allied notes that in their depositions the Garcias stated that Robert did not have permission. This evidence only presents the other side of the genuine issue of material fact that must be resolved at trial.

Allied also argues that when both parties move for summary judgment, they have effectively stipulated that there is no genuine issue of material fact and that summary judgment is appropriate. *Kromrei v. AID Ins. Co.,* 110 Idaho 549, 551, 716 P.2d 1321, 1323 (1986). In *Kromrei,* the Court said:

> The mere fact that both parties move for summary judgment does not in and of itself establish that there is no genuine issue of material fact. However, where, as in the present case, both parties have moved for summary judgment based upon the same evidentiary facts and the

same issues and theories, they have effectually stipulated that is no genuine issue of material fact and summary judgment is therefor appropriate.

The issue on appeal is the same issue that was before the district court: whether there were three uninsured motorist coverages under Kromrei's policy merely because three vehicles were insured thereunder.

*Id.* (citations omitted).

The issue in *Kromrei* was the construction of the insurance policy, not a factual question as we have in this case.

### V.

### CONCLUSION.

We reverse the summary judgment granted by the trial court and remand the case for further proceedings.

We award costs on appeal to Allstate. Allstate did not request attorney fees on appeal.

McDEVITT, C.J., BISTLINE and TROUT, JJ., and REINHARDT, J. Pro Tem., concur.