[No. B061496. Second Dist., Div. Four. Oct. 19, 1993.]

FREMONT COMPENSATION INSURANCE COMPANY et al., Plaintiffs and Respondents, v.
MARY HARTNETT, Defendant and Appellant.

**COUNSEL**

Edward N. Morris for Defendant and Appellant.

Johnston, Koppany & Auerbach, William J. Koppany, Norton & Reino and A. Jay Norton for Plaintiffs and Respondents.

**OPINION**

**VOGEL (C. S.), J.**—These consolidated actions arising from automobile-pedestrian accident were tried by the court. Judgment was in favor of the injured person, plaintiff and respondent Lisandro Ramirez Azucena, and in favor of plaintiff and respondent Fremont Compensation Insurance Company, which paid workers' compensation benefits to Azucena on behalf of Azucena's employer. The judgment, in the total amount of $80,000, was against the three defendants jointly and severally, Leonard Sapp, Karen Sapp, and Mary Hartnett. Although notice of appeal was filed on behalf of all three defendants, the only issues raised on appeal concern the liability of appellant Hartnett as the owner of the vehicle involved in the accident.

Hartnett is the mother of Leonard and Karen Sapp. Title and registration of the vehicle were in Hartnett's name. The car's brakes were "totally gone." Leonard Sapp pushed the car, without its engine running, while Karen Sapp steered the car, into the premises of A. C. Tire Services, in order to have the brakes repaired. Without brakes, however, they were unable to stop the car, which ran into Azucena, an employee of A. C. Tire Services. Azucena was pinned between the car and a tire-changing machine, suffering serious injury.

Hartnett contends the evidence does not support judgment against her for the full $80,000 damages. She contends the evidence is insufficient to show

she gave implied permission to the other defendants to move or operate the car, and that in any event her liability is solely based on Vehicle Code section 17150[1] and is therefore limited to $15,000 by section 17151.

We affirm, concluding that substantial evidence supports the trial court's implied finding of permission, and that liability is not limited by section 17151, because Hartnett's liability is independently based on a vehicle owner's common law nondelegable duty to keep brakes in working order. (*Maloney* v. *Rath* (1968) 69 Cal.2d 442, 448 [71 Cal.Rptr. 897, 445 P.2d 513, 40 A.L.R.3d 1].)

## FACTS

The car, a 1975 Mercedes Benz, was purchased in April 1985, when Leonard was about 25. Because Leonard's credit was not good enough, Hartnett cosigned the loan papers. Title and registration were in her name. The car was purchased for Leonard's use; Hartnett never drove it, because she had her own car. Leonard had his own residence and kept the car there initially. Hartnett may have made some of the car payments, especially at the beginning, but in general the monthly loan payments and car expenses were paid by Leonard.

The accident occurred in May 1988. Five or six months before the accident, Leonard brought the car to Hartnett's house, saying that it was not running and that he needed to store it in her yard until he got enough money to have it fixed. She let him store it in her backyard, behind a chain link fence. Until the day of the accident, the car was not moved from the yard. The keys were kept in the house in the place "where we put our keys." Hartnett had no occasion to tell Karen not to unlock the car or not to move it from the yard without prior permission, because Karen never used it. Although Hartnett testified she told Leonard "not to move it until he could get the money to have it fixed," because she "didn't want him to drive an unsafe vehicle," the trial court appears to have disbelieved this testimony.

The accident occurred May 17, 1988. Leonard did not tell Hartnett that he was planning to push the car to a service station. She did not expressly give him permission to push the car. While Hartnett was away at work, Leonard showed up at the door and asked Karen to steer while he and a friend pushed the car. Leonard told Karen to put the key in the ignition, in order to shift the transmission into neutral, but the engine was not running. Leonard and

---

[1]All statutory references are to the Vehicle Code unless otherwise indicated.

Karen knew that without the engine running, neither the power steering nor the power brakes would work. Leonard knew that the car "didn't have any brakes," the brakes "were totally gone." With Karen steering, Leonard and his friend pushed the car about three blocks to A. C. Tire Services, where Leonard intended to have new brakes installed.

After the car was pushed into the driveway of A. C. Tire Services, Karen could not stop the car, because it had no brakes. She aimed toward a chain link fence, hoping the fence would stop the car. The front bumper struck not only the fence but also Azucena. Azucena was facing a tire-changing machine at the time, and was struck from behind with no warning. His body was pressed between the machine and the hood of the car for about half a minute.

The trial court found all three defendants liable for the total damages, which the court found to be $80,000. The court commented that Hartnett was jointly responsible to the same degree as the other defendants and that her liability was not limited to $15,000.

## PERMISSION

■ Hartnett first contends there is no substantial evidence to support a conclusion that Leonard and Karen used or operated the car with Hartnett's express or implied permission.[2]

■ In reviewing a claim of insufficiency of evidence, the appellate court is bound to view the evidence in the light most favorable to the judgment, resolving all conflicting evidence and issues of credibility in favor of the judgment. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480].)

■ The existence of the requisite permission under section 17150 is to be determined by the trier of fact based on all the circumstances and inferences reasonably to be drawn therefrom. Where the trier of fact has drawn an inference of implied permission from conflicting evidence, and such inference is reasonable and supported by substantial evidence, the appellate court may not interfere with the trier's factual conclusion of

[2]Section 17150 provides: "Every owner of a motor vehicle is liable and responsible for death or injury to person or property resulting from a negligent or wrongful act or omission in the operation of the motor vehicle, in the business of the owner or otherwise, by any person using or operating the same with the permission, express or implied, of the owner."

permissive use. (*Peterson* v. *Grieger, Inc.* (1961) 57 Cal.2d 43, 51-52 [17 Cal.Rptr. 828, 367 P.2d 420].)

The trier of fact, as the exclusive judge of the credibility of witnesses, is not required to believe the owner's denial of having given permission, if there is other evidence warranting the inference of permission. (*Scheff* v. *Roberts* (1950) 35 Cal.2d 10, 15 [215 P.2d 925]; *Anderson* v. *Wagnon* (1952) 110 Cal.App.2d 362, 366-367 [242 P.2d 915]; *Casey* v. *Fortune* (1947) 78 Cal.App.2d 922, 924-925 [179 P.2d 99].)

 Here, the trial court did not believe Hartnett's testimony in which she suggested having told Leonard not to move the car from the yard. Other substantial evidence justified the trial court to infer that Hartnett impliedly gave permission to Leonard to move or operate the car. Hartnett testified the car was purchased for Leonard's use, and until he brought it to her yard it was his exclusively. After the car was parked there, Hartnett took no positive steps to deny access to Leonard; the keys were readily accessible in the place "where we put our keys." (*Casey* v. *Fortune, supra,* 78 Cal.App.2d at pp. 924-925; *Elkinton* v. *Cal. State Auto. Assn.* (1959) 173 Cal.App.2d 338, 343-344 [343 P.2d 396].) Hartnett testified only that she told Leonard "not to move it *until* he could get the money to have it fixed." (Italics added.) Even if believed, this statement implied Hartnett's awareness that Leonard could move the car when he had enough money, and was not a prohibition against operating it. The trial court could reject as unreasonable any expectation that the car could be fixed without removing it from the yard.

Substantial evidence supports the conclusion that Leonard had Hartnett's implied permission to use or operate the car.

### AMOUNT OF JUDGMENT

 Hartnett correctly points out that an owner's liability which is based solely on section 17150 is limited to $15,000 by section 17151.[3] (*Martinez* v. *Southern Pacific Co.* (1955) 45 Cal.2d 244, 254 [288 P.2d 868].)

This limitation does not apply, however, to a vehicle owner's own common law negligence, as distinguished from the owner's statutory vicarious

---

[3]Section 17151, subdivision (a) provides in pertinent part: "The liability of an owner . . . *imposed by this chapter* and not arising through the relationship of principal and agent or master and servant is limited to the amount of fifteen thousand dollars ($15,000) for the death of or injury to one person in any one accident . . . ." (Italics added.)

liability for the operator's negligence. (*Benton* v. *Sloss* (1952) 38 Cal.2d 399, 403 [240 P.2d 575] [used car dealer's liability for selling vehicle with negligently inspected brakes]; *Syah* v. *Johnson* (1966) 247 Cal.App.2d 534, 538-539 [55 Cal.Rptr. 741] [owner's negligent entrustment of vehicle to incompetent driver].)

Here, the trial court properly declined to limit the award against Hartnett to $15,000, because there is an independent basis for full liability, Hartnett's presumed negligence in failing to perform a vehicle owner's nondelegable duty to maintain brakes in good repair. (*Maloney* v. *Rath, supra,* 69 Cal.2d 442; *Clark* v. *Dziabas* (1968) 69 Cal.2d 449, 451 [71 Cal.Rptr. 901, 445 P.2d 517]; *Harris* v. *Irish Truck Lines, Inc.* (1974) 11 Cal.3d 373, 377-378 [113 Cal.Rptr. 489, 521 P.2d 481]; *Dutcher* v. *Weber* (1969) 275 Cal.App.2d 961, 963 [80 Cal.Rptr. 378]; see generally, Annot. (1971) 40 A.L.R.3d 9.)

■ Under *Maloney,* the breach of statutory duty to maintain brakes in good working order (§§ 26453, 26454) raises a presumption of negligence. (69 Cal.2d at p. 444.) *Maloney* held that, for policy reasons, a defendant owner cannot rebut the presumption of negligence merely by showing that the owner had no notice of brake defects. Because a car with defective brakes poses a grave risk of serious bodily harm or death, the duty to exercise reasonable care to maintain brakes is nondelegable. (69 Cal.2d at pp. 446-448.) To establish a defense to liability caused by brake failure the defendant owner "must establish not only that he did what might reasonably be expected of a person of ordinary prudence who desired to comply with the law 'but also that the failure was not owing to the negligence of any agent, whether employee or independent contractor, employed by him to inspect or repair the brakes.' " (*Harris* v. *Irish Truck Lines, Inc., supra,* 11 Cal.3d at p. 377.) Although not exactly a rule of strict liability, the *Maloney* rule comes close to strict liability because the presumption of negligence is so difficult to overcome, and because its very purpose is to assure that a financially responsible defendant be available to an injured plaintiff for harm negligently caused by brake failure. (*Maloney* v. *Rath, supra,* 69 Cal.2d at p. 446.)

■ Under the evidence in this case, including the permissive use, the trial court could reasonably conclude that Hartnett as owner of the vehicle failed to overcome the presumption of negligence, breached the nondelegable duty to maintain brakes, and was liable for all the damages caused by brake failure.

## DISPOSITION

The judgment is affirmed.

Epstein, Acting P. J., and Rappe, J.,* concurred.

---

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.