Filed 5/13/14  Adelman v. Adelman CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DOLORES ADELMAN,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RONALD ADELMAN,<br><br>    Defendant and Appellant. | B248303<br><br>(Los Angeles County<br>Super. Ct. No. BC470672) |

APPEAL from an order of the Super or Court of Los Angeles County, William F. Fahey, Judge.  Affirmed.

Alessi & Koenig and Thomas J. Bayard, for Defendant and Appellant.

Alana Law Group, Alana B. Anaya, and Jonathan A. Malek, for Plaintiff and Respondent.

_____

This appeal concerns a dispute arising out of a gift of real property at 23520 Dry Canyon Cold Creek Road in Calabasas. Jerome and Dolores Adelman transferred title to their son, Ronald Adelman (appellant), and his wife, Rhonda. A disagreement soon arose between the parties, which resulted in a settlement agreement. Appellant and his wife were to vacate the property and leave it in "broom-clean" condition. In exchange, Dolores (respondent) was to tender two $250,000 payments to appellant. When respondent discovered the property had been left in a dirty condition, she filed a motion to enforce the settlement agreement. The court awarded respondent an offset to the final $250,000 payment due to appellant for the amount of costs incurred in cleaning up the property. It also awarded respondent attorney fees. Appellant challenges these awards. We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

In November 2004, respondent executed a deed on the property in favor of appellant and Rhonda, which described the transfer as a "bonafide [*sic*] gift." After the deed was recorded in September 2005, appellant executed two promissory notes for $337,802.24 and $448,811.95 in favor of the Jerome and Dolores Adelman Family Trust. The first was secured by a deed of trust, and called for monthly payments with the remaining balance due by November 2007. The second was not secured by a deed of trust, and called for a lump sum payment by November 2009. Appellant did not make any payments on the notes.

Respondent sent a notice of acceleration to appellant in 2011, and then filed a lawsuit (*Adelman v. Adelman* (Super. Ct. L.A. County, 2012, No. 470672) claiming that appellant had breached his obligations under the notes. In March 2012, respondent recorded a notice of default on the property based on the outstanding payments due by appellant. In a cross-complaint naming respondent and her family trust as defendants, appellant alleged that both notes were unenforceable for lack of consideration.

In September 2012, the parties reached a settlement agreement with the trial court retaining jurisdiction to enforce it pursuant to Code of Civil Procedure section 664.6. By

2

October 4, 2012, appellant was to reconvey "the deed of trust in the amount of $800,000 recorded against the property . . . ."[1] He was to vacate the property, leave it in "broom-clean condition with all debris and personal property removed," and provide the keys and quitclaim title to respondent. In return, respondent was to pay appellant $250,000. The parties warranted that there were no encumbrances, liens, judgments, assignments, or transfers recorded against the property, but if any were discovered, respondent would pay to release them and deduct the costs from any balance due to appellant. Once any encumbrances were removed, respondent was to take possession of the property, sell it, and tender a second $250,000 payment to appellant within 180 days of October 4, 2012 or upon sale, whichever occurred first. If the parties failed to comply with this plan, respondent could foreclose on the property and recover $448,811.95 plus $50,000 of attorney fees from appellant. Finally, the parties agreed to bear their own costs, except on actions to enforce this agreement, in which case the prevailing party was entitled to reasonable attorney fees.

Pursuant to the agreement, appellant and Rhonda vacated the property on October 4, 2012. The next day, respondent's attorney observed "trash, appliances, debris, cloths [*sic*], bottles, broken art, broken lights, broken cleaning supplies[,] . . . other garbage type items left on the driveway . . . [,] [¶] . . . damaged fixtures, [and] damaged walls" on the property, which smelled of dog feces and urine. Sometime later, respondent apparently paid the first $250,000 to appellant. She also told appellant that she would tender the second $250,000 payment upon sale of the property, which was then in escrow, after deducting the cost of remedying the damage that appellant had left behind. In December 2012, the court granted appellant's motion to expunge respondent's original lis pendens on the property, but denied a request for reconveyance of the deed of trust securing a note

---

[1]    It appears that counsel and the settlement agreement refer to "deed" where "note" is more appropriate. In addition, the settlement agreement, as read into the trial court record, does not specify the origin of this "deed of trust in the amount of $800,000." The evidence does not indicate whether this amount refers to the sum of both original notes.

for $337,000.[2] In January 2013, appellant filed a lis pendens on the property, and a lawsuit (LASC case No. LC099492) against respondent seeking declaratory relief that the deed of trust securing the $337,000 note was unenforceable.[3]

In February 2013, respondent's attorney provided appellant with an invoice totaling $41,026 for costs of repairing and cleaning up the property. Respondent asked appellant to execute escrow documents verifying that appellant had transferred title to respondent. Respondent also requested that appellant modify his demand of the final $250,000 payment to reflect a reduced amount on account of the cleanup expenses. In response, appellant demanded that respondent reconvey the deed of trust securing the $337,000 note and pay the full $250,000 upon sale since appellant "never agreed to bear the cost of improving the property to listing condition." Appellant said he would forward the requested escrow documents after respondent complied with these demands.

In March 2013, respondent filed a motion for a hearing on whether the court should order enforcement of the settlement agreement on a shortened timeframe, and expunge the lis pendens appellant had placed on the property. Respondent alleged appellant had breached the settlement agreement by: (1) failing to leave the property in "broom-clean" condition, (2) not executing documents required for escrow, and (3) encumbering sale of the property by filing a second lawsuit and recording a lis pendens. In his opposition, appellant argued that respondent already had title to the property, and paid the first $250,000, so she had waived the provision regarding "broom-clean" condition. Appellant also claimed he did not intentionally damage the property (which was already damaged when he originally took possession), his lawsuit was not a breach of the settlement agreement, and he did not act unreasonably by conditioning the

---

[2]     The record does not indicate why the court denied the request for reconveyance. In addition, the deed of trust supported by the $337,000 note is not included in the settlement agreement.

[3]     In March 2013, respondent filed a notice of related case with regards to both Los Angeles Superior Court case Nos. BC470672 and LC099492.

4

signing of the escrow papers on reconveyance of the deed of trust securing the $337,000 note.

Just before the evidentiary hearing, the lis pendens from appellant's lawsuit was released. The court reached a preliminary finding that appellant deliberately left the property in a "filthy condition," and had not acted in good faith with regard to the escrow documents. Then appellant's attorney tendered the escrow documents to respondent. After escrow closed, the court instructed the parties to submit briefs on the amount of cleanup expenses that should be assessed to appellant, and the amount of attorney fees that respondent should receive. In her brief, respondent claimed she should be awarded $18,151 in cleanup damages (including maid services, carpet removal and replacement, odor treatment, lighting fixtures, and window cranks) and $10,505 in attorney fees for bringing suit to enforce the settlement agreement and filing the motion to expunge appellant's lis pendens. Appellant opposed an award of respondent's requested damages and fees because the work had been performed by an unlicensed contractor in violation of Business and Professions Code section 7031, most of the repairs and clean up were not related to leaving the property in "broom-clean" condition, and respondent did not prevail in her action. He argued respondent should recover only $6,650 in damages and $1,064 in attorney fees.

In April 2013, the court held that appellant "knowingly and willfully breached the settlement agreement and the implied covenant of good faith and fair dealing associated with the agreement." Appellant left the property in a "deplorable condition" and "refused to cooperate in executing necessary documents in escrow." By filing a second lawsuit and recording a lis pendens, appellant also prevented respondent from performing pursuant to the settlement agreement, and caused respondent to incur further costs.

In addition, the court held that respondent's reliance on Business and Professions Code section 7031 was unpersuasive.[4] That statute prohibits unlicensed contractors from

---

[4] All statutory references are to the Business and Professions Code, unless otherwise indicated.

5

bringing actions to recover compensation, but does not address whether respondent may obtain an offset for unlicensed contractor costs incurred due to appellant's intentional actions. In short, the contractor's unlicensed status was irrelevant to whether appellant was required to pay respondent for the cleanup. The court found that because of the "deplorable condition of the property," respondent was entitled to an offset of $11,300 from the final $250,000 payment due to appellant pursuant to the settlement agreement. The offset included fees for debris removal ($5,800), interior maid service ($800), carpet removal ($1,200), odor treatment ($2,700), and replacing missing window cranks ($800). In addition, respondent was entitled to an offset of $10,505 in attorney fees incurred during the motion to enforce the settlement agreement and expunge the lis pendens.

Appellant filed a timely notice of appeal.

## DISCUSSION

### I

Appellant claims the court's order awarding an offset for cleanup costs is unenforceable, since the contractor who performed the work was unlicensed. He contends that section 7031 and public policy prohibit a judicial award of any fees incurred from work by unlicensed contractors.

Section 7031, subdivision (a) bars unlicensed contractors from bringing actions to collect fees for their work. (§ 7031, subd. (a).) It also permits a customer to sue an unlicensed contractor to recover all payments, even if the customer previously knew the contractor operated without a license. (§ 7031, subd. (b); *White v. Cridlebaugh* (2009) 178 Cal.App.4th 506, 520-521 (*Cridlebaugh*) ["unlicensed contractors are required to return all compensation received without reductions or offsets for the value of material or services provided"].) We review de novo issues of statutory construction. (*Cridlebaugh*, at p. 520 [conducting independent review of § 7031, subd. (b)].)

While section 7031 prevents unlicensed contractors from maintaining a lawsuit to collect payment, it does not state that a court cannot order a third party to reimburse a customer for such costs. Appellant's reliance on *Ahdout v. Hekmatjah* (2013)

6

213 Cal.App.4th 21 (*Ahdout*) is misplaced. In that case, the court held that the trial court erred in affirming an arbitration award that failed to consider whether the unlicensed contractor was required to disgorge any received payments. (*Ahdout*, at pp. 39-40.) It remanded the case for de novo review on whether section 7031, subdivision (b) was applicable. (*Id.* at p. 40.) Here, respondent seeks reimbursement for costs already incurred in business with an unlicensed contractor. Respondent only incurred the costs because of appellant's willful breach of the settlement agreement. Section 7031 would bar the contractor from bringing suit to collect fees from respondent. It would also allow respondent to obtain a refund from the unlicensed contractor. However, no such claims appear to have been raised in the trial court. Accordingly, the court did not violate public policy or section 7031 when it ordered appellant to reimburse respondent for the costs of cleaning up the property.

During oral argument, appellant's counsel cited *Preach v. Monter Rainbow* (1993) 12 Cal.App.4th 1441 (*Preach*), not included in its briefing, for the proposition that the trial court's award of unlicensed contractor fees violates public policy. In that case, a property owner promised a commission to a licensed real estate broker for securing a tenant. (*Id.* at pp. 1446-1447.) The broker associated with a lawyer, who lacked a real estate license, but nevertheless engaged in activities for which a real estate license was required. (*Ibid.*) In granting the broker's motion for summary judgment, the trial court concluded that the owner's promise to pay the broker a commission was unenforceable because the broker's right to compensation was based on activities unlawfully performed by the lawyer. (*Id.* at p. 1454.) The reviewing court found that work done by an unlicensed broker was "'expressly forbidden by law.'" (*Ibid.* quoting *Hahn v. Hauptman* (1930) 107 Cal.App. 739, 740.) The court summarized: "one may not recover upon a contract for services rendered in the commission of acts which are malum prohibitum, 'this upon the ground of an enlightened public policy.'" (*Ibid.*) Although in *Preach* the court reversed summary judgment, appellant argues the case nevertheless requires us to reverse the fees awarded to respondent because they too were performed by an

7

unlicensed professional. We disagree. Unlike *Preach*, respondent was not engaged in the same business as the unlicensed professional. Accordingly, any public policy of discouraging the unlicensed practice of contracting work would not be advanced by denying respondent reimbursement. Further, in *Preach* the property owner failed to pay the broker a commission, as promised. Here, respondent incurred and paid costs in cleaning up her property, and seeks reimbursement from appellant, who caused the circumstances requiring the cleanup. The reasoning of *Preach* does not apply.

II

Appellant claims the offset should be reduced since most of the contractor's work was not completed to remedy any damage that he caused. He contends that replacing the carpet, painting the interior, fixing landscaping, removing mold, installing a water heater, and repairing windows, doors, and the garage were renovations to improve the condition of the property for sale.

The trial court found that appellant intentionally damaged the property in violation of the settlement agreement that required him to vacate it in "broom-clean" condition. The offset included expenses for debris removal, interior maid service, carpet removal, odor treatment, and missing window cranks. There is no evidence that the court included costs to replace the water heater, to install landscaping, or to improve the property for sale beyond cleaning up the mess left by appellant. In fact, the trial court did not award respondent the full $18,151 in expenses that respondent had claimed. Instead, it awarded a reduced amount of $11,300 to include only costs related to appellant's actions. Although appellant contends the window cranks were missing when he originally took possession of the property, we defer to the trial court's determination of that factual issue. (See *Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968 [deferring to trier of fact on issues of credibility under review for substantial evidence]; *In re Marriage of Hasso* (1991) 229 Cal.App.3d 1174, 1180 [trial court determination of factual issues on motion to enforce settlement agreement must be upheld where supported by substantial

evidence].)  For the same reasons, we reject appellant's claim that the contractor's fees were excessive.

III

Appellant argues that respondent is not entitled to the court's full award of attorney fees.  He contends that respondent prevailed only partially, since appellant had already provided the escrow documents that respondent requested in her motion, and the lis pendens upon which respondent's motion was based had already been released.  Appellant also claims that because cleanup costs should not have been awarded, respondent did not prevail.  In the alternative, appellant argues the attorney fees should be reduced, since respondent was awarded an offset for only a portion of her original requested relief.

Code of Civil Procedure section 1032, subdivision (a)(4) provides courts with the discretion to award costs to the "prevailing party" in an action.  In actions to enforce contracts with fee clauses, Civil Code section 1717, subdivision (a) requires courts to award reasonable attorney fees and costs to the "party prevailing."[5]  Here, the settlement agreement provided for attorney fees to the party prevailing in a case to enforce the agreement.  The "party prevailing" is "the party who recovered a greater relief in the action on the contract."  (Code Civ. Proc., § 1717, subd. (b)(1).)  "'[I]n deciding whether there is a "party prevailing on the contract," the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources.  The prevailing party determination is to be made only upon final resolution of the contract claims and only by "a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions."'  [Citation.]" (*de la Cuesta v. Benham* (2011) 193 Cal.App.4th 1287, 1294, italics omitted [finding court acts within its discretion in awarding attorney fees to party obtaining incomplete

---

[5] When authorized by contract, attorney fees are permissible as costs.  (Code Civ. Proc., § 1033.5, subd. (a)(10).)

victory].)  We review a court award of attorney fees to a prevailing party for abuse of discretion.  (*Silver v. Boatwright Home Inspection, Inc.* (2002) 97 Cal.App.4th 443, 449.)

When respondent filed a motion to enforce the settlement agreement, she sought reimbursement for the cleanup costs, removal of the lis pendens so that she could proceed with sale of the property, and appellant's compliance with her escrow document request.  After respondent filed a motion alleging that appellant breached the settlement agreement, the lis pendens was released, and appellant provided the escrow documents.  When the trial court found in favor of respondent, it expressly held that appellant had breached the settlement agreement, and awarded an offset to compensate respondent for the costs incurred to clean up the property.  Respondent achieved her litigation objectives.  Under these circumstances, the court did not abuse its discretion in awarding attorney fees to respondent.

Finally, during oral argument appellant's counsel contended that respondent's interests in the property had merged.  He argued that respondent was the beneficiary of the $337,000 deed of trust, and held title to the property through appellant's quitclaim deed.  (See *Ammco Ornamental Iron, Inc. v. Wing* (1994) 26 Cal.App.4th 409, 417 ["where the legal title and the entire beneficial interest become united in a single person the trust terminates"].)  As a result, appellant's counsel claimed, respondent's refusal to reconvey the $337,000 deed of trust created an artificial appearance that appellant had violated the settlement agreement; in short, that respondent held title to the property, the $337,000 deed of trust was invalid, and respondent cannot properly claim harm while refusing to reconvey an invalid deed of trust.  To support this argument, appellant's counsel cited two cases at oral argument, but not in its opening brief.  (See *id.* at p. 409; *Castro v. Superior Court* (2004) 116 Cal.App.4th 1010.)  Appellant also raised the merger argument in its opposition to the motion to enforce the settlement agreement, but not in its opening brief before this court.  (See *Taylor v. Roseville Toyota, Inc.* (2006) 138 Cal.App.4th 994, 1001, fn. 2 [points raised after opening brief are forfeited].)

These arguments should have been presented in appellant's opening brief. In any event, they are unavailing in light of the court's additional reasons for finding appellant breached the settlement agreement. Assuming but not concluding that appellant's filing of a lis pendens was proper under the agreement, the court found he left the property in "deplorable condition" and "refused to cooperate in executing necessary documents in escrow." The agreement expressly required the property be transferred in "broom-clean" condition. The court did not abuse its discretion in finding appellant breached the settlement agreement, and respondent was entitled to fees.

## DISPOSITION

The order awarding the offset to respondent is affirmed. Respondent is entitled to her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**

EPSTEIN, P. J.

We concur:

WILLHITE, J.

EDMON, J.*

_____
\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.